COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DANIEL ROJAS, CARLA ROJAS, ATM'S OF EL PASO, DANCAR ENTERPRISES, INC., and DOCUMENT PROCESSING SYSTEMS, INC., | § | No. 08-11-00072-CV |
| | § | Appeal from the |
| Appellants, | § | 34th Judicial District Court |
| v. | § | of El Paso County, Texas |
| DAVID DUARTE and ELIZABETH DUARTE, | § | (TC#2007-2949) |
| Appellees. | § | |

## **O P I N I O N**

David Duarte sued Daniel Rojas alleging that he and Rojas verbally formed a partnership for the purpose of acquiring and operating ATMs.[1]  Duarte sought to establish the existence of the partnership and the value of his one-half interest in the partnership.  The jury found that a partnership existed and that the value of Duarte's one-half interest was $119,000.  In accordance with the jury's verdict, the trial court rendered judgment for Duarte and against Rojas.  Rojas appeals, contending the evidence was legally insufficient to support the jury's finding of a partnership and award of damages.  We affirm, in part, and reverse and remand, in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Rojas and Duarte grew up together.  Duarte considered Rojas his mentor, and Rojas took Duarte under his wing, occasionally helping Duarte find work.  At one of those jobs, Duarte learned how to repair, maintain, and program ATM machines.  Duarte knew that Congress had

---

[1] Duarte was joined by his wife, Elizabeth.  They sued Rojas and Rojas's wife, Carla, and some of the entities through which the business operated, *i.e.*, ATM's of El Paso, Dancar Enterprises, Inc., and Document Processing Systems, Inc. For the sake of simplicity and convenience, we refer to the parties as "Duarte" and "Rojas."

passed legislation permitting individuals to own and operate ATMs, and when he became aware that a particular business had several ATMs sitting unused in a warehouse, he bought one and approached Rojas about acquiring, selling, and operating ATMs together. At trial, Duarte testified that Rojas assented to his proposal and that, in the fall of 2002, they agreed to be partners, splitting profits and liabilities equally and reinvesting profits into the business. Rojas, on the other hand, testified that he and Duarte were not partners and that Duarte was merely contract labor who helped him operate the ATM business, which he began previously with his wife. The business grew handsomely, but by May 2005 the relationship between Rojas and Duarte had soured to the point where they agreed to go their separate ways. Duarte testified that he and Rojas agreed to divide the partnership's assets and property equally, with Rojas keeping the ATM's located on the West Side of El Paso and in Las Cruces, New Mexico and Duarte keeping the remaining ATM's located in El Paso. Rojas had his accountant assist Duarte in establishing a corporation, and Duarte retained the name of the business, ATM's of El Paso. The division of assets and property never occurred, however. Duarte testified that after Rojas returned from a trip, Rojas told him that he was keeping all the ATMs because he needed them to expand into interchange processing, and that, instead, Rojas was going to give Duarte $1,000 per month until Rojas paid him out. Duarte received a grand total of $2,500.

Duarte eventually sued Rojas. At trial, Duarte presented evidence from an expert who opined that the partnership was worth $420,000 as of December 31, 2008. At the close of evidence, Rojas moved for a directed verdict on several bases. The trial court granted the motion for directed verdict as to the claims of conversion and punitive damages, but denied it as to the other claims. The trial court did, however, instruct the jury to determine what the value of

2

Duarte's partnership interest was as of either May 31, 2005 or December 31, 2008. The jury found that Duarte voluntarily withdrew from the partnership and determined that he had incurred damages of $119,000. After trial, Rojas moved for judgment n.o.v. on the bases, among others, that there was no evidence that a partnership existed and no evidence that the value of Duarte's partnership interest was $119,000 as of May 31, 2005. The trial court denied the motion by implication when it signed the final judgment in favor of Duarte.

## STANDARD OF REVIEW

By three issues, Rojas contends that the trial court erred by denying its motions for directed verdict and for judgment n.o.v. because the evidence is legally insufficient to support the jury's findings. We review the trial court's ruling on a motion for directed verdict under a legal sufficiency standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Likewise, we review the trial court's ruling on a motion for judgment n.o.v. under a legal sufficiency standard. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009), *citing City of Keller*, 168 S.W.3d at 823.

In reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the jury's verdict, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller*, 168 S.W.3d at 827. If more than a "scintilla of evidence" exists to support the jury's findings, it is legally sufficient. *City of Keller*, 168 S.W.3d at 822. More than a "scintilla of evidence" exists when the evidence supporting the finding, as a whole, would enable reasonable and fair-minded people to differ in their conclusions. *Id.* As the sole judge of the weight and credibility of the evidence, the jury is entitled to resolve any conflicts in the evidence and to choose which

3

testimony to believe. *Id.* at 819. We therefore assume that jurors decided questions of credibility or conflicting evidence in favor of the verdict if they reasonably could do so. *Id*. at 819, 820. Accordingly, we do not substitute our judgment for that of the jurors if the evidence falls within this zone of reasonable disagreement. *Id*. at 822.

## EXISTENCE OF PARTNERSHIP

In his first issue, Rojas argues that the trial court erred by denying his motions for directed verdict and for JNOV because "there was no evidence that the parties created a partnership, even if one was legally possible." We disagree.

### *Applicable Law*

Both Rojas and Duarte agree that the applicable law in this case is the Texas Revised Partnership Act (TRPA), as construed by the Texas Supreme Court in *Ingram v. Deere*, 288 S.W.3d 886 (Tex. 2009).[2] The TRPA provides that "an association of two or more persons to carry on a business for profit as owners creates a partnership . . . ." TEX.REV.CIV.STAT.ANN. art. 6132b–2.02(a). Pursuant to the TRPA, five factors indicate the creation of a partnership: (1) receipt or right to receive a share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation in or right to participate in control of the business; (4) sharing or agreeing to share losses or liability; and (5) contributing or agreeing to contribute money or property to the business. TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(a).

When determining whether a partnership exists under the TRPA, the fact finder must consider the totality of the circumstances bearing on the evidence in support of the five statutory

---

[2] Although the TRPA expired on January 1, 2010, it was in effect during all of the events made the basis of this lawsuit. *See* Act of May 31, 1993, 73rd Leg., R.S., ch. 917, § 1, 1993 Tex Gen. Laws 3887, 3890 (expired January 1, 2010) (former TEX.REV.CIV.STAT.ANN. arts. 6132b–2.02(a), 6132b–2.03(a)). The Texas Business Organizations Code now applies to all partnerships, regardless of their formation date. *See generally* TEX.BUS.ORGS.CODE ANN. § 152.001-.914 (West 2012), *Ingram*, 288 S.W.3d at 894 n.4.

factors.  *Ingram*, 288 S.W.3d at 896.   Under this approach, the evidence, or lack thereof, in support of the five factors is considered on a continuum.   On one end of the continuum, a partnership exists as a matter of law when conclusive evidence supports all five statutory factors. *Id*. at 898.   On the other end of the continuum, a partnership does not exist as a matter of law when there is no evidence as to any of the five factors, and conclusive evidence of only one factor will normally be insufficient to establish the existence of a partnership.   *Id*.   Points on the evidentiary continuum between these two ends are where the challenge lies in applying the totality-of-the-circumstances test.   *Id.* at 896.   As the statutory comments to the TRPA make clear, this is because "it is not feasible to say exactly which [statutory] factors must be present, or what the relative weights of the factors should be."   TEX.REV.CIV.STAT.ANN. art. 6132b–2.03 cmt.

### *Discussion*

We now turn our focus to the evidence pertaining to each of the five statutory factors to determine whether the evidence was legally sufficient to support the jury's finding that Duarte and Rojas were partners.

### 1.  Sharing Profits

The first factor is "receipt or right to receive a share of profits of the business," a factor that, along with the right to control, has traditionally been important in determining whether a partnership exists and "will probably continue to be [one of] the most important under the [TRPA]."   TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(a)(1), cmt.   Rojas argues that "[t]here is no evidence that [Duarte] ever got a nickel from the profits of the business."   Instead, Rojas contends that Duarte was paid as an independent contractor and that, in 2003, he prepared some

5

"split sheets" to entice Duarte to buy stock in Dancar Enterprises[3] by showing Duarte what his profits would be if he were to become a shareholder. We agree that there is no evidence that Duarte actually received a share of the profits. There is evidence in the record, however, of Duarte's right to share profits.

Duarte testified that he and Rojas agreed to be partners, to split profits and liabilities equally, and to reinvest profits back into the business to support its growth. Duarte's testimony that he and Rojas agreed to split the profits equally is supported by the aforementioned "split sheets" Rojas prepared for Duarte in 2003. Each of the three "split sheets" lists the revenues generated by the business, the expenses associated with running the business, and the "Total split amount" allocated to Duarte and Rojas. Two of the "split sheets" allocate the net profits to Duarte and Rojas equally. One of the "split sheets" allocating the net profits equally has the notation "what *we would have made* w/processing →*3,057.70*." [Emphasis added]. And significantly, nothing in the "split sheets" indicates that they were prepared for the purpose of enticing Duarte to buy stock in Dancar, as Rojas maintains. Duarte's testimony and the "split sheets" prepared by Rojas constitute more than scintilla of evidence of an agreement to share profits.

### 2. Intent

The second statutory factor is "expression of an intent to be partners in the business." TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(a)(2). "Evidence of expression of intent could include . . . the parties' statements that they are partners," but "there must be evidence that both parties expressed their intent to be partners." *Ingram*, 288 S.W.3d at 900. Rojas contends that the testimony of three witnesses that Duarte and Rojas introduced themselves as partners, while

---

[3] As noted above in footnote number one, Dancar Enterprises was one of the entities through which the ATM business operated.

6

probative, was legally insufficient to establish the existence of a partnership when Rojas in fact "did not want [Duarte] to be a partner." We do not dispute that Rojas testified that he did not want Duarte to be a partner. However, Duarte adduced some evidence that *both* he and Rojas expressed an intent to be partners.

Three witnesses testified that, in different business settings, Rojas and Duarte introduced themselves as partners. Cecilia Ayers, a childhood friend of Duarte's, testified that Rojas and Duarte presented themselves as partners to her and to her boss at a wine festival where they had installed an ATM machine. Likewise, Margaret McGuire Luevano, a woman Duarte had known many years and one of the first people Duarte solicited to buy an ATM machine, testified that Rojas and Duarte presented themselves as partners to her at a restaurant where they had gathered to finalize her purchase of an ATM machine. Finally, Jaime Romo, Luevano's son and longtime friend of Duarte's whom Duarte had asked to apprise Luevano of the opportunity to buy an ATM machine, testified that Rojas introduced himself as Duarte's partner at the aforementioned restaurant.[4] Rojas attempts to diminish the impact of Romo's testimony by directing us to his testimony that when he referred to Duarte as his "partner" he used the word as a term of endearment, not in its legal sense. (Rojas's testimony, however, finds no independent support in the record and flies directly in the face of the testimony of the three witnesses identified above, each of whom had no stake in the outcome of the lawsuit. The testimony of these witnesses constitutes more than scintilla of evidence that both Duarte and Rojas expressed an intent to be partners.

### 3.  Control

---

[4]  In his brief, Rojas contends that his introduction to Romo as Duarte's partner "cannot be said to [sic] a sufficient expression of intent to someone you've never before met." Rojas, however, cites no authority for this proposition.

The third factor under the TRPA is participation in or right to participate in control of the business, which, as noted above, has always been an important factor and "will probably continue to be [one of] the most important under the [TRPA]." TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(a)(3), cmt. "The right to control a business is the right to make executive decisions." *Ingram*, 288 S.W.3d at 901. Several sub-factors are relevant to concluding that a party has the right to make executive decisions, including: (1) the exercise of authority over the business's operation; (2) the right to write checks on the business's checking account; (3) control over and access to the business's books; and (4) the receipt of and management of all of the business's assets and monies. *Id*. at 901-02. Rojas asserts that Duarte did not have the right to make executive decisions because Duarte lacked control over the business's books and checkbook and over the entity the partnership operated through when it began. We do not dispute that Rojas was in charge of the business's accounting and that he compiled the financial information to which Duarte had access. However, there was evidence adduced at trial that Duarte had the right to make, and did make, executive decisions.

Duarte testified that he exercised authority over some of the business's operations. According to Duarte, he was in charge of sales, public relations, customer service, and the maintenance, repair, and installation of the ATM's. Duarte also testified that, although Rojas was "management," they made some decisions collaboratively. For example, when Duarte spotted a good location for an ATM, he discussed the opportunity with Rojas and together they decided whether to proceed. In addition, Duarte testified that he had complete access to the business's checking account and had the right to write checks from the account. In support of his testimony, Duarte introduced into evidence the business account application submitted to the bank in which

8

he was identified as an owner and key individual. The evidence undermines Rojas's testimony that Duarte was granted access to the account only for convenience. Furthermore, Duarte testified that he had daily, unrestricted access to the business's books and records, which were kept at Rojas's home – to which Duarte had a key. According to Duarte, he also had access to monitor the ATM's. Duarte's testimony and the evidence introduced at trial constitutes more than scintilla of evidence that Duarte participated in or had the right to participate in control of the business.

### 4. Sharing Losses

The fourth statutory factor is sharing or agreeing to share losses or liability. TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(a)(4). Although an agreement to share losses or liabilities is not necessary to create a partnership under the TRPA, the existence of such an agreement supports the existence of a partnership. TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(c); *Ingram*, 288 S.W.3d at 902. Rojas argues that there is no evidence that Rojas shared losses because "there were no losses in the sense that expenses exceeded income . . . ." Although Rojas is correct that there is no evidence that the business ever lost money, this is not the relevant test. The relevant test is whether Duarte shared or agreed to share losses or liabilities. *See* TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(a)(4). There is evidence in the record that Duarte agreed to share, and did share, liabilities.

Duarte testified that he and Rojas agreed to share equally the liabilities incurred in buying back ATM machines from their customers, and, in accordance with their agreement, bought back machines from Luevano and two gentlemen named Tovar and Betancourt. These purchases were recorded, and characterized as expenses in two of the three "split sheets" Rojas provided Duarte.

9

These two "split sheets" reflect that, after expenses were subtracted, including the repurchase of the ATM machines, Duarte and Rojas shared equally in the profits. When considered in the light most favorable to the jury's verdict, Duarte's testimony and the "split sheets" prepared by Rojas constitute more than scintilla of evidence that Duarte and Rojas agreed to share, and did share, liabilities. *See City of Keller*, 168 S.W.3d at 827.

## 5. Contribution

The fifth and final factor is whether the alleged partners contributed or agreed to contribute money or property to the business. TEX.REV.CIV.STAT.ANN. art. 6132b–2.03(a)(5). The TRPA defines "property" as "all property, real, personal, or mixed, tangible or intangible, or an interest in that property." TEX.REV.CIV.STAT.ANN. art. 6132b–1.01(15). Rojas contends that there is no evidence that Duarte contributed "any money to the venture," and that if Duarte did contribute property in the form of a single ATM machine, the money for that machine and the others was provided by entities controlled by Rojas. Duarte testified, however, that he contributed money to the business and agreed to reinvest his profits back into the business, which, by all accounts, did occur. Duarte also testified that he contributed several ATMs to the business. Contrary to Rojas's assertion, Duarte's testimony constitutes more than a scintilla of evidence that he agreed to contribute, and did contribute, money and property to the business.

## 6. Conclusion

We conclude that the record contains more than a scintilla of evidence in support of each of the five factors of the TRPA. Though the evidence as to each and every factor may not be conclusive, it is nonetheless sufficient to enable reasonable and fair-minded people to differ in their conclusions. As established above, there is ample evidence in the record that Duarte shared

10

profits and control over some aspects of the business, the two factors that the statutory comments to the TRPA state that will probably continue to the most important factors in determining whether a partnership exists. *See* TEX.REV.CIV.STAT.ANN. art. 6132b–2.03 cmt. Accordingly, we conclude that the evidence is legally sufficient to support the jury's finding of a partnership. Rojas's first issue is overruled.

## BREACH OF FIDUCIARY DUTY

In his second issue, Rojas argues that he did not breach any fiduciary duty to Duarte because there was no partnership from which a fiduciary duty arose. This argument fails, however, because as established above, the evidence is legally sufficient for the jury to have found that Duarte and Rojas were partners. Rojas's second issue is overruled.

## DAMAGES

In his third and final issue, Rojas argues that the jury's award of $119,000 in damages is erroneous because "[t]here is absolutely no evidence in the record to support" the jury's finding that this amount was the value of half of the partnership on May 31, 2005. In so arguing, Rojas asserts that nothing in his financial exhibits or in the report from Duarte's business valuation expert, who opined that the value of the business was $420,000 as of December 31, 2008, provided the jury with a rational basis to calculate damages of $119,000. We agree.

### *Applicable Law*

As a general rule, the jury has broad discretion to award damages within the range of evidence presented at trial, as long as there is a rational basis for the jury's calculation. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002); *Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex.App.--Austin 1997, writ denied). If there is a rational basis for the jury's

11

calculation, its damages award will not be disregarded and set aside, even if it is unclear in the record exactly how the jury calculated the award.  *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex.App.--Austin 1993, writ denied).   If, however, there is no rational basis for the jury's calculation, *i.e.*, a calculation that is not authorized or supported by, or properly extrapolated from, the evidence presented at trial, the jury's damages award will be disregarded and set aside.  *See id.* at 930-31 (damages neither authorized nor supported by the evidence may be disregarded).

### *Discussion*

In this case, there is no doubt that Duarte suffered some amount of damages.   However, there is no rational basis for the jury's award of $119,000 in damages.   Neither of the parties have been able to explain in their briefs or at oral argument how the jury arrived at that figure.   In his brief, and at oral argument, Duarte offered several theories as to how the jury could have arrived at $119,000, but his attempts to justify the amount do not find reasonable support in the record.

The evidence presented by Duarte provided a relatively precise method for calculating the value of the partnership as of one date and one date only – December 31, 2008.   In opining that the value of the partnership was $420,000 as of that date, Duarte's expert relied, in large part, on the business's federal income tax returns, general ledger reports, and financial statements for the four-year period beginning December 31, 2005 and ending December 31, 2008.   These records contained a variety of numbers to which Duarte's expert applied several tools of valuation analysis.   He "normalized" assets, income, and cash flow by adjusting for items not representative of the business's value as a going-concern, applied a discount rate to the "normalized" figures, and added back cash in excess of that required to sustain the business's operations.   As is evident, Duarte's expert did an excellent job of identifying for the jury the financial aspects of the business

12

that he considered important in determining its value, and providing it with his calculation, the source of the numbers inputted into his calculation, and the result of his calculation. The problem is that the data relied upon by Duarte's expert and the valuation methods he used are pertinent only to the value of the partnership as of December 31, 2008. Nothing in the expert's testimony or report identifies any other date on which the value of the partnership was, or could have been, calculated by using the same data and methods. Given these constraints, the jury's determination that $119,000 was the value of Duarte's partnership as of May 31, 2005 was not authorized or supported by the evidence presented at trial. Moreover, as a result of these shortcomings, the jury lacked sufficient data from which to extrapolate properly that the value of the partnership was $119,000 as of May 31, 2005.

Because Duarte failed to prove the amount of his damages with reasonable certainty, the evidence is legally insufficient to support the jury's damages award.

## DISPOSITION

Rojas requests that we reverse the judgment of the trial court and render judgment that Duarte take-nothing. Given our conclusion that the evidence was legally insufficient to support the jury's damages award, the traditional relief would be to reverse and render a take-nothing judgment. *See Larson v. Cactus Util. Co.*,730 S.W.2d 640, 641 (Tex. 1987)(articulating general rule that when an appellate court finds the evidence legally insufficient to support a damages verdict, the court should reverse and render a take-nothing judgment as to that amount). However, pursuant to Rule of Appellate Procedure 43.3, we have broad discretion to reverse and remand a case for a new trial in the interests of justice. *See* TEX.R.APP.P. 43.3 (providing for such a disposition); *Fanning v. Fanning*, 847 S.W.2d 225, 226 (Tex. 1993)(Opin. on

13

reh'g)(appellate courts have broad discretion to reverse and remand in the interests of justice).

Remand in the interests of justice is appropriate in a case where the plaintiff has proved liability and that he has sustained some loss as result, but has failed to prove the amount of damages with *reasonable certainty*. *See Williams v. Gaines*, 943 S.W.2d 185, 193 (Tex.App.--Amarillo 1997, writ denied)(concluding that, although no evidence was presented that met the definition of fair market value in the jury's instructions, remand for a new trial on damages was appropriate in the interests of justice because the jury found that the parties had an agreement, that the defendant breached the agreement, and that the plaintiff sustained some loss as a result); *A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.*,798 S.W.2d 606, 616 (Tex.App.--Dallas 1990, writ denied)(concluding that, although plaintiff did not prove its damages with reasonable certainty, there was some evidence which showed damages generally, and interests of justice, therefore, required remand for new trial). Here, the jury found the existence of a partnership between Duarte and Rojas and that although Duarte voluntarily withdrew from the partnership, he was not adequately compensated by Rojas and sustained damages as a result. Under these circumstances, the interests of justice require that Duarte be given an opportunity to prove the amount of his damages with reasonable certainty.

## CONCLUSION

Accordingly, we reverse that portion of the trial court's judgment awarding $119,000 to Duarte and remand this case to the trial court for a new trial as to Duarte's damages only as of May 31, 2005. In all other respects, the judgment of the trial court is affirmed.


November 30, 2012

CHRISTOPHER ANTCLIFF, Justice

14

Before McClure, C.J., Antcliff, J., and Medrano, Judge
Medrano, Judge (Sitting by Assignment)