**Opinion issued October 18, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00352-CV

———————————

**PHAP V. NGUYEN, ANDY NGO, AND DUNG T. VU, Appellants**

**V.**

**MANH HOANG AND DUNG LE, Appellees**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-72719**

---

## O P I N I O N

In this case, appellees, Manh Hoang and Dung Le (collectively, "Appellees"),

sued appellants, Phap V. Nguyen, Andy Ngo, and Dung T. Vu (collectively,

"Appellants"), for breach of a partnership agreement and breach of fiduciary duties

arising out of the management and dissolution of a family-run business raising chickens. A jury found that a partnership existed between the parties and that Appellants breached the partnership agreement and breached their partnership duties owed to Appellees. The trial court awarded Appellee Hoang $93,109.75 "for breach of the parties' agreement" and $212,208 "for [the Appellants'] breach of duty in a partnership," and it awarded Appellee Le $72,170.48 for breach of the partnership agreement and $132,418.26 for breach of partnership duties. It did not award any exemplary damages for breach of fiduciary duty.

In six issues, Appellants contend that: (1) there is insufficient evidence to support the finding of a partnership; (2) there is legally insufficient evidence that they breached a contract with Appellees; (3) and (4) there is insufficient evidence that Appellees suffered any damages for breach of a partnership agreement and breach of contract; (5) the trial court violated the one-satisfaction rule when it awarded damages for both breach of a partnership agreement and breach of contract; and (6) there is insufficient evidence that Appellant Vu engaged in any conduct relating to breach of a partnership agreement or breach of contract.

We modify the judgment of the trial court and affirm as modified.

## Background

The parties are members of Vietnamese families who decided to purchase and operate a chicken farm. This enterprise involved raising chickens for a chicken

producer, Anderson Farms, which provided the chickens for the parties to raise.[1]

Appellants Nguyen and Vu are married to each other. Vu is Appellee Hoang's sister-in-law. At the time of the relevant events, Appellee Le was dating Tuan Ngo, who is the brother of Appellant Andy Ngo.[2] Appellants Nguyen and Ngo are brothers-in-law.

Ngo had a friend in Georgia who owned a chicken farm, and Appellants Ngo and Nguyen both expressed interest in learning how to operate such a farm. In 2006, Ngo and Nguyen met with Appellees and other family members to determine if they were interested in contributing funds to apply towards a down payment on a farm that had six existing chicken houses ("the Georgia Farm"). At this meeting, the parties discussed the Georgia Farm, which cost $1,490,000, as well as the amounts of each person's contribution to the $320,000 down payment. Appellants Nguyen and Vu agreed to contribute $80,000 as husband and wife, for a 25% share of any future profits; Appellee Hoang and his wife Diem Vu, who is not a party to this proceeding, also agreed to contribute $80,000, for a 25% share; Appellee Le and Tuan Ngo, her boyfriend, agreed to contribute $50,000, for a 15.5% share of future

---

[1]     On appeal, Appellants state that the correct name of the chicken producer is Sanderson Farms, but the parties used the name "Anderson Farms" throughout their testimony at trial, and we use the same name here.

[2]     Tuan Ngo and Diem Vu—Manh Hoang's wife and Dung Vu's sister—contributed funds toward the purchase of the chicken farm, along with Tony Ngo, Trang Le, Tien Ngo, and Dung Dinh. None of these individuals are parties to this proceeding.

profits; and Appellant Ngo contributed $30,000, for a 10% share of profits. Non-parties Tony Ngo and Trang Le contributed $50,000, for a 12.25% share of profits; and non-parties Tien Ngo and Dung Dinh contributed $30,000, for a 12.25% share. Appellee Hoang testified that all of the investors were partners, but he stated they agreed to let Appellant Ngo take care of most aspects of the business because he had the greatest English skills.

Title to the Georgia Farm was solely in the names of all three Appellants. Appellee Le testified that the parties all agreed to list only Appellants on the loan and title documents because Appellants told Appellees that including too many names on the documents could complicate issues such as obtaining credit. Appellee Hoang agreed with Appellee Le's testimony and also stated that Appellants promised Appellees that, once the business expanded, their names would then be added to the documents. Le also testified that Appellants Ngo and Nguyen and Appellee Hoang all worked on the Georgia Farm and that all of them received a monthly salary for their work at the farm. Le stated that the parties had a family meeting and discussed how much each of them would get paid for working on the farm. Le testified that the parties never had an agreement that Appellant Ngo could withhold twenty percent of the profits to account for his and Appellant Nguyen's labor on the Georgia Farm, although it is undisputed that these amounts were withheld. Le also testified that Appellants Nguyen and Vu told her that, although

4

her name was not included on any of the loan or title documents, she would be required to assist in paying back the mortgage on the Georgia Farm. Hoang stated, "If the business is successful, everybody will benefit. If we fail, everybody fails together."

In March 2008, the parties agreed to sell the Georgia Farm and use the proceeds from that sale to purchase land for a chicken farm in Texas so they could be closer to family in the Houston area. Appellants Ngo and Nguyen consulted with the Appellees, and, after searching for suitable properties, they ultimately purchased a farm in Robertson County, Texas ("the First Texas Farm"). Appellants deferred paying capital gains taxes on the sale of the Georgia Farm pursuant to Internal Revenue Code Section 1031 by purchasing the First Texas Farm.

Title to the First Texas Farm was, again, solely in the names of Appellants, Nguyen, Ngo, and Vu. Appellee Le testified that, after this purchase, she helped work on the farm, as did Appellee Hoang and Appellants Ngo and Nguyen. Le stated that she received $3,000 monthly for her work, and both Hoang and Nguyen received $3,500 per month for their labor on the First Texas Farm.[3] Le again testified that the

---

[3]     On cross-examination, Le agreed with Appellants' counsel that, for the First Texas Farm, these partners only received a salary when Appellants received a batch of chickens from Anderson Farms. Le testified that Anderson Farms paid $7,000 per batch.

parties did not discuss or agree to allow Ngo to withhold twenty percent of the profits as labor charges for himself and Nguyen for their work on the First Texas Farm.

Appellants constructed a total of twenty-four chicken houses on the First Texas Farm. Appellants sold the First Texas Farm in November 2010 and purchased a second chicken farm in Texas ("the Second Texas Farm"), but they did not give Appellees the opportunity to participate in this venture. Instead, Appellants made a distribution to Appellees and the other non-party family members who had initially contributed funds for the purchase of the Georgia Farm. Appellants used part of the proceeds from the sale of the First Texas Farm to purchase the Second Texas Farm, and they again deferred paying capital gains taxes on the sale of First Texas Farm pursuant to section 1031.

The record contains conflicting evidence concerning when Appellants distributed the profits from the First Texas Farm and when they purchased the Second Texas Farm. Testimony from Appellee Le and Appellant Ngo suggested that after Appellants sold the First Texas Farm, they divided the profits among themselves and Appellees and non-party family members and then they purchased the Second Texas Farm with their share of the distribution. Appellee Hoang, however, testified that by the time he received his share of the distribution following the sale of the First Texas Farm, Appellants had already purchased the Second Texas Farm. The record does not contain any closing documents from the purchase of the

Second Texas Farm, nor did any party specifically testify as to when this sale occurred.

The trial court admitted a handwritten exhibit ("Exhibit 1") prepared by Appellant Ngo that broke down the calculations he made to determine the amounts to distribute and the amounts to withhold from the sales of both the Georgia Farm and the First Texas Farm. This exhibit reflected that the mortgage on the Georgia Farm was $1,573,488 and that the Georgia Farm ultimately sold for $2,230,000; thus, the profit on the sale was $656,512. Ngo then subtracted the $320,000 down payment made on the Georgia Farm for a total of $336,512. Ngo multiplied that amount by .20, which represented a 20% share of the profits that he withheld to account for his and Appellant Nguyen's labor on the Georgia Farm, for a total of $67,302. Ngo also withheld $108,171 to cover capital gains taxes on the Georgia Farm. Ngo thus withheld a total of $175,473 from the profits on the sale of the Georgia Farm.

Exhibit 1 also reflected that Appellants took out a $4,540,758 mortgage on the First Texas Farm and that they sold that farm for $6,930,000, for a $2,389,242 profit. Ngo subtracted the family's contribution of $863,556 for a net profit amount of $1,525,686 on the sale of the First Texas Farm. He then multiplied this amount by 20% and withheld $305,137, representing his and Appellant Nguyen's labor charges for the First Texas Farm. Ngo also withheld $543,698 to account for capital

gains taxes on that property. He thus withheld a total of $848,835 for the First Texas Farm.

Appellee Le testified that, based on Ngo's calculations and his deduction of costs for labor and taxes, she was supposed to receive $261,665 in the distribution of proceeds from the sale of the First Texas Farm. However, Ngo divided this amount in half and gave one half to Le and the other half to Tuan Ngo, his brother and Le's former boyfriend. Le stated that she never asked Ngo to pay any part of her portion of the distribution to Tuan Ngo. On cross-examination, Le again testified that Tuan Ngo did not actually contribute any money and that the entire $50,000 contribution to the initial down payment on the Georgia Farm was comprised of Le's funds. Le, who, with Tuan Ngo, had agreed to contribute $50,000 to the initial investment, for a 15.6% share of the profits, ultimately received $139,872 in the distribution of proceeds from the sale of the First Texas Farm. Appellee Hoang, who, with his wife Diem Vu, a non-party, agreed to contribute $80,000, for a 25% share of future profits, ultimately received $404,108.

Appellant Ngo testified that, at their initial meeting, the family members discussed which property would be purchased in Georgia as well as the amounts that each person would contribute to the down payment. He stated that they did not have an agreement about sharing losses. Appellant Vu, Nguyen's wife, testified that when the Georgia Farm first started operating, the business was not making any money,

8

so she had to provide funds from her separate business to pay the farm's expenses. Ngo acknowledged that when the parties were trying to purchase the First Texas Farm, Nguyen needed to borrow $400,000 from a friend, and Appellants and Appellees all paid a proportional share of the interest on that loan.

Ngo also agreed that the parties never mentioned anything about paying his and Nguyen's labor costs. However, he testified that he and Appellant Nguyen both received $500 for the first couple of months of operation of the Georgia Farm, and then they were able to raise their salary to $1,500 per month while they operated that farm. Later, he and Nguyen stopped paying themselves a salary because the amounts that they received from Anderson Farms for each batch of chickens was barely enough to cover their expenses. They used the amount that they saved from not paying themselves a salary to put towards a loan to construct two additional chicken houses on the Georgia Farm.

Appellant Ngo also did not draw a salary for the year following the purchase of the First Texas Farm, which was when the first twelve chicken houses on that farm were being constructed. Ngo testified that, when deciding to withhold a portion of the profits to pay for his and Nguyen's labor on the First Texas Farm, he believed that twenty percent was a fair amount, given the effort they had expended and the risk they had undertaken with the loans. He agreed that he did not mention this to Appellees until he gave them a worksheet with the distribution calculations after the

9

sale of the First Texas Farm. He also testified that it was his understanding that he could withhold tax amounts from the distribution and use those funds to help purchase the second Texas farm because Appellees Le's and Hoang's names were never on the various loans involved, and each year Appellants paid the applicable taxes under their own names.

Ngo also testified that his understanding was that the $50,000 that Le contributed was from Tuan Ngo and herself because they were living together at the time and they "[came] up with the money together." At the time of the distribution, Ngo split their portion in half because he assumed that they were together. He also testified that Le told him to give part of her portion to Tuan Ngo. Ngo testified that Tuan Ngo worked for about two years on the farms, and Ngo would write his brother a check for his salary, but he would make the check out to Le.

In the jury charge, the trial court submitted questions for breach of a partnership agreement, breach of partnership duties, and breach of fiduciary duties. Questions Number One and Four asked:

> Did any of the parties listed below agree with Hoang [or Le] that Hoang [or Le] would have a 25% [or 15.65] interest in the Chicken Farm Business?
>> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties['] unexpressed thoughts or intentions.

The jury answered "yes" for all three Appellants. Questions Number Two and Five asked whether any Appellants "fail[ed] to comply with the agreement with" Hoang and Le. The jury again answered "yes" for all three Appellants. Questions Number Three and Six asked, "[W]hat sum of money, if any, if paid now in cash would fairly and reasonably compensate Hoang [or Le] for his [or her] damages, if any, that resulted from the failure to comply with the parties' agreement." The jury was instructed to consider "the proceeds from the Chicken Farm Business" owed to Hoang and Le as the sole element of damages. The jury answered $93,109.75 for Hoang and $72,170.48 for Le.

Questions Number Seven and Thirteen asked:

Did the parties and Hoang [or Le] create a partnership?

> A "partnership" is an association of two or more persons to carry on a business for profit as owners, regardless of whether the persons intend to create a partnership or the association is called a "partnership," "joint venture," or other name.
>
> Factors indicating that persons have created a partnership include the persons':
>
> 1)  receipt or right to receive a share of profits of the business;
>
> 2)  expression of an intent to be partners in the business;
>
> 3)  participation or right to participate in control of the business;

11

4)  agreement to share or sharing losses of the business or liability for claims by third parties against the business; and

5)  agreement to contribute or contributing money or property to the business.

The jury answered "yes" for all three Appellants.

Questions Number Eight and Fourteen asked:

Did any party listed below fail to comply with one or more of the following duties as to Hoang [or Le]?

Duty of loyalty. A partner's duty of loyalty includes:

a)  accounting to and holding for the partnership all property[,] profit, or benefits derived by the partner in conducting and winding up the partnership business or from use by the partner of partnership property.

b)  refraining from dealing with the partnership on behalf of a person who has an interest adverse to the partnership; and

c)  refraining from competing or dealing with the partnership on behalf of a person who has an interest adverse to the partnership[.]

Duty of care. A partner's duty of care to the partnership and the other partners is to act in the conducting and winding up of the partnership business with the care that an ordinary prudent person would exercise in similar circumstances. An error in judgment does not by itself constitute a breach of the duty of care.

Duty of utmost good faith, fairness and honesty. Partners owe a duty of utmost good faith, fairness, and honesty in dealings with each other on matters pertaining to the enterprise.

Duty to disclose. Partners owe each other a duty of full disclosure of all matters affecting the partnership.

The jury then found that each of the three Appellants, with respect to both Hoang and Le, failed to comply with one or more of the enumerated duties. As damages for Appellants' breach of partnership duties, the jury awarded Hoang $212,208 and Le $132,418.26. Although the jury found that a relationship of trust and confidence existed between Appellants and Appellee Hoang and between Appellants and Appellee Le, and that Appellants breached their fiduciary duties to Hoang and Le, the jury did not award exemplary damages, or any damages, specifically for breach of fiduciary duty.

The trial court entered judgment on the jury's verdict. The trial court awarded Hoang $93,109.75 "for breach of the parties' agreement" and $212,208 "for [Appellants'] breach of duty in a partnership" against the Appellants, jointly and severally. The trial court awarded Le $72,170.48 "for breach of the parties' agreement" and $132,418.26 "for [Appellants'] breach of duty in a partnership" against the Appellants, jointly and severally. This appeal followed.

**Sufficiency of the Evidence**

In their first, second, third, fourth, and sixth issues, Appellants contend that the jury's verdict was not supported by legally sufficient evidence. Specifically, Appellants argue that (1) there was no evidence of a partnership among the parties, (2) there was no evidence that Appellants breached a contract with Appellees, (3) there was no evidence that Appellees suffered damages for breach of a

partnership agreement or breach of contract, and (4) there was no evidence that Appellant Vu participated in any acts leading to liability.

## A. Standard of Review

In a legal sufficiency review, when appellants attack the sufficiency of an adverse finding on an issue on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *Figueroa v. Davis*, 318 S.W.3d 53, 59 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822. We sustain a no-evidence point only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. If more than a scintilla of evidence supports the jury's finding, the verdict must be upheld. *Figueroa*, 318 S.W.3d at 59 (quoting *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d

14

706, 709 (Tex. 2003)). "[M]ore than a scintilla of evidence exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

The jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another. *Figueroa*, 318 S.W.3d at 60. We may not substitute our judgment for that of the jury. *Id.* "Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict." *Id.*

### B. Existence of Partnership

In their first issue, Appellants contend that no partnership existed.

The General Partnership Act ("GPA") in the Business Organizations Code defines a partnership as "an association of two or more persons to carry on a business for profit as owners."[4] TEX. BUS. ORGS. CODE ANN. § 152.051(b) (West 2012);

---

[4]    Appellants argue that this case is governed by the Texas Revised Partnership Act, which they contend was still in effect at the time the alleged partnership formed. However, the Legislature enacted the General Partnership Act ("GPA") in the Business Organizations Code in 2003 and provided that it would govern general partnerships formed on or after January 1, 2006, the effective date of the Code. *See Ingram v. Deere*, 288 S.W.3d 886, 894 n.4 (Tex. 2009); *see also* TEX. BUS. ORGS. CODE ANN. § 402.001(a)(1) (West Supp. 2016) ("On or after the effective date of this code, this code applies to . . . a domestic entity formed on or after the effective date of this code."); *id.* § 1.002(20) (West Supp. 2016) ("'Effective date of this code' means January 1, 2006."). The parties in this case did not begin discussing the possibility of purchasing a chicken farm until 2006. Thus, the GPA, as set out in the Business Organizations Code, governs whether a partnership was formed in

*Ingram v. Deere*, 288 S.W.3d 886, 895 (Tex. 2009) (construing substantively identical provision in former Texas Revised Partnership Act ("TRPA")). Section 152.052(a) states five factors indicating the creation of a partnership:

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) agreement to share or sharing:

    (A) losses of the business; or

    (B) liability for claims by third parties against the business; and

(5) agreement to contribute or contributing money or property to the business.

TEX. BUS. ORGS. CODE ANN. § 152.052(a) (West 2012); *Ingram*, 288 S.W.3d at 895 (construing identical provision in TRPA).

Courts should decide the issue of whether a partnership exists by "considering all of the evidence bearing on the [statutory] partnership factors." *Ingram*, 288 S.W.3d at 896; *see also Rojas v. Duarte*, 393 S.W.3d, 837, 841 (Tex. App.—El Paso

---

this case. We further note that the Code's and the Revised Partnership Act's provisions relating to the formation of partnerships—the provisions defining "partnership" and stating a list of factors indicating that persons have created a partnership—are identical. *Compare* TEX. BUS. ORGS. CODE ANN. § 152.051(b) (West 2012) (defining "partnership") *and id.* § 152.052(a) (West 2012) (stating factors indicating that persons have created partnership) *with* Act of May 31, 1993, 73d Leg., R.S., ch. 917, § 1, sec. 2.02, 1993 Tex. Gen. Laws 3887, 3890 (expired Jan. 1, 2010) (defining partnership) *and id.* sec. 2.03, 1993 Tex. Gen. Laws at 3890 (expired Jan. 1, 2010) (listing factors that indicate creation of partnership).

16

2012, pet. denied) (stating that when determining whether partnership exists, "the fact finder must consider the totality of the circumstances bearing on the evidence in support of the five statutory factors").  The statute "does not require proof of *all* of the listed factors in order for a partnership to exist."  *Ingram*, 288 S.W.3d at 896.  The evidence in support of the five factors is considered on a continuum.  *Rojas*, 393 S.W.3d at 841.  At one end of the continuum, "a partnership exists as a matter of law when conclusive evidence supports all five statutory factors," and, at the other end, "a partnership does not exist as a matter of law when there is no evidence as to any of the five factors, and conclusive evidence of only one factor will normally be insufficient to establish the existence of a partnership."  *Id.*  In *Ingram*, the Texas Supreme Court noted that no evidence of the statutory factors "will preclude the recognition of a partnership" and that "conclusive evidence of all five factors establishes a partnership as a matter of law."  288 S.W.3d at 904.

The court also stated that comments to the TRPA—the predecessor to the GPA in the Business Organizations Code—"note that the traditional import of sharing profits as well as control over the business will probably continue to be the most important factors" and that the TRPA also "recognizes that sharing of losses may be indicative of a partnership arrangement but states that such an arrangement is 'not necessary to create a partnership.'"  *Ingram*, 288 S.W.3d at 896; Act of May 31, 1993, 73d Leg., R.S., ch. 917, § 1, sec. 2.03(c), 1993 Tex. Gen. Laws 3887, 3891

17

(expired Jan. 1, 2010) ("An agreement to share losses by the owners of a business is not necessary to create a partnership."); TEX. BUS. ORGS. CODE ANN. § 152.052(c) (providing same).

Therefore, we examine the evidence in support of each of the statutory factors to determine whether the parties established a partnership.

### 1. *Right to Receive a Share of the Profits*

Appellants acknowledge on appeal that the parties all agreed that they would share in any profits from the chicken business in proportion to their initial contribution toward the down payment on the Georgia Farm.

We conclude that the evidence conclusively supports the existence of such an agreement. Therefore, this "most important factor[]" is established as a matter of law. *See Ingram*, 288 S.W.3d at 896.

### 2. *Expression of Intent to be Partners*

Section 152.052 and its predecessor in the TRPA do "not require direct proof of the parties' intent to form a partnership," but, instead, "expression of intent to form a partnership" is one factor to consider in the analysis. *Id.* at 895–96. "When analyzing expression of intent under TRPA, courts should review the putative partners' speech, writings, and conduct." *Id.* at 899. In analyzing this factor, courts should only consider evidence that is not specifically probative of other factors, such as parties' statements that they are partners or one party's holding the other party out

18

as a partner on the business's letterhead or in a signed partnership agreement. *Id.* at 900. Courts should not consider evidence of profit or loss sharing, control, or contribution of money or property as evidence of an expression of intent to be partners. *Id.* Use of "partner" can "constitute legally significant evidence of expression of intent when made in a circumstance that indicates significance to the business endeavor," so courts should consider the terminology used, the context in which the statements were made, and the identity of the speaker and listener. *Id.* There must be evidence that both parties expressed their intent to be partners. *Id.*

Here, as evidence that the parties expressed an intent to be partners, Appellees point to evidence that, when asked whether he considered himself to be partners with Ngo, Appellee Hoang testified, "we [are] all partners, but we agree that we let [Appellant] Andy Ngo . . . take care of everything." Hoang also testified, "That's what we agreed at the first time that if we make it, everybody will make it." Hoang further testified that, at the initial family meeting, Appellants and Appellees "all agreed together" that Appellees Hoang and Le were owners and that, "[w]hen the business gets bigger, [Hoang's] name will be in the document[s]" demonstrating title. He stated that he did not get paid for the time he spent helping out on the Georgia farm and that, at that time, he believed that he was an owner. Hoang also testified that the parties "all agreed together" at the initial family meeting that they would be partners.

However, Appellants argue that Appellees point to no evidence that Appellants ever made statements that they and Appellees were partners or held Appellees out as partners to third parties, such as in loan or title documents or in agreements with Anderson Farms. *See id.* at 900. Appellant Ngo testified that he considered Appellees to be investors only, who would ultimately receive a percentage of the profits from the chicken business, but that they were not owners or partners.

We conclude that there is some evidence that the parties expressed the intent to be partners but to name Appellant Ngo as managing partner.

### 3. *Participation or Right to Participate in Control of Business*

The right to control a business is the right to make executive decisions, such as exercising authority over the business's operations, the right to write checks on the business's checking account, control over and access to the business's books, and receiving and managing the business's assets. *Id.* at 901. This and sharing of profits are the "most important factors" in determining the existence of a partnership. *See id.* at 896. Evidence relevant to this factor includes whether a putative partner only has "input" over business decisions and whether another person "retain[s] ultimate control over business decisions." *Knowles v. Wright*, 288 S.W.3d 136, 147 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (observing, in concluding as matter of law that no partnership existed, that "[a]lthough Knowles subsequently

testified that he and Wright made decisions together, Knowles's testimony made clear that he had no control over the purported partnership and that Wright retained ultimate control over business decisions").

Here, the evidence establishes that all parties participated in exercising control over the business of the partnership, including making decisions regarding the purchase of property and the method of the purchase, deciding when to sell property and the terms of sale, and agreeing upon who would operate the property and who would receive salaries and how much salary each would receive.

The record shows that Appellant Ngo had a friend in Georgia who owned a chicken farm, and Appellants Ngo and Nguyen both expressed interest in learning how to operate such a farm. Thus, in 2006, Ngo and Nguyen met with Appellees and other family members to determine if they were interested in contributing funds to apply towards a down payment on the Georgia Farm. Title to the Georgia Farm was solely in the names of Appellants Nguyen, Ngo, and Vu, but Appellee Le testified that the parties all agreed to list only Appellants on the loan and title documents because Appellants told Appellees that including too many names on the documents could complicate issues such as obtaining credit. Appellee Hoang agreed with Le's testimony and also stated that Appellants promised them that, once the business expanded, their names would then be added to the documents. Hoang testified, "[W]e [are] all partners, but we agree that we let Andy Ngo . . . take care

21

of everything." He also stated, "That's what we agreed at the first time that if we make it, everybody will make it."

Appellees argued that they had and exercised the right to participate in control of the chicken business. Appellees point to evidence that the parties had a family meeting and discussed how much each of them would be paid for working on the farm. Appellee Hoang testified that the parties all agreed at the initial family meeting that whoever worked at the farm should receive a monthly salary of $2,000. Appellants Ngo and Nguyen and Appellee Hoang all worked on the Georgia Farm, and all received a salary. Hoang testified that he worked at the Georgia Farm for about two weeks when the business was getting started and that he also worked at the First Texas Farm. His duties included conducting clean up at the farms.

In addition, Appellee Le testified that all parties were consulted about buying property in Georgia and that the parties all discussed the purchase price of the property, what would be required to run the property, and the salaries of those who worked at the property. Le visited the Georgia Farm with Appellants and Tien Ngo. Contrary to Appellants' assertion that although Le was present at the time of the final distribution there was no evidence that she participated in any business decisions, Le testified that all of the parties decided to sell the Georgia Farm and buy the First Texas Farm, and the parties held a meeting to discuss the purchase price and who would operate the First Texas Farm. Appellant Ngo also testified that Appellants

spoke with Appellees Hoang and Le about the First Texas Farm prior to the purchase. *See Malone v. Patel*, 397 S.W.3d 658, 677 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (considering fact that "decisions were made by all three" putative partners in concluding that some evidence existed that putative partner had "right to exercise, and did exercise, some control over executive decisions" of business).

We conclude that some evidence also supports this factor.

### 4. *Sharing or Agreeing to Share Losses or Liabilities of Business*

Under Business Organizations Code section 152.052, as under its predecessor the TRPA, an agreement to share losses is not necessary to create a partnership, but the existence of such an agreement can support a contention that a partnership exists. *See Ingram*, 288 S.W.3d at 902; *Sewing v. Bowman*, 371 S.W.3d 321, 334 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). The inquiry for this factor is not whether evidence exists that the business ever lost money, but whether the putative partners shared or agreed to share losses or liabilities. *Rojas*, 393 S.W.3d at 843–44.

Appellant Ngo testified that, although the parties agreed to share in the profits, he did not expect Appellees to sustain any losses or contribute additional money if it became necessary to do so. Ngo acknowledged, however, that Appellees had to pay a proportional share of the interest on a $400,000 loan borrowed to purchase the First Texas Farm. Appellee Le testified that, even though her name did not appear

on the loan documents for the Georgia farm, Appellants Nguyen and Vu told her that she would have to assist in paying back the mortgage on the property. Appellee Hoang testified that the understanding of all parties was that "[i]f the business is successful, everybody will benefit. If we fail, everybody fails together." Similarly, Hoang testified that the parties "all agreed" that all parties would have to contribute if the business suffered a loss. He further testified that the parties discussed that all of them would be responsible for paying back amounts owed to the bank and that he paid $4,000 per month as his proportion of the interest on the $400,000 loan to purchase the Texas property.

Here, there is evidence that the parties agreed that Appellants and Appellees would all share in losses of the business and that Appellees did, in fact, help contribute to interest payments on a loan made to Appellants to purchase the First Texas Farm. *See id.* at 844 (noting that inquiry is whether putative partners shared or agreed to share losses or liabilities). Although such an agreement is not necessary to establish a partnership, the existence of such an agreement supports the contention that a partnership exists. *See Ingram*, 288 S.W.3d at 902.

We conclude that this factor supports the jury's finding that a partnership existed.

### 5. *Agreeing to Contribute Money or Property to Business*

Finally, the evidence is undisputed that all parties, together with several non-parties, agreed to contribute money to the business. In 2006, Appellants Ngo and Nguyen met with Appellees and other family members to determine if they were interested in contributing funds to apply towards a down payment on a farm that had six existing chicken houses, the Georgia Farm. At this meeting, the parties discussed the Georgia Farm, which cost $1,490,000, as well as the amounts of each person's contribution to the $320,000 down payment. Appellants Nguyen and Vu agreed to contribute $80,000 as husband and wife, for a 25% share of any future profits; Appellee Hoang and his wife Diem Vu agreed to contribute $80,000 for a 25% share of profits; Appellee Le and Tuan Ngo, her boyfriend, agreed to contribute $50,000, for a 15.6% share of future profits; and Appellant Ngo contributed $30,000, for a 10% share of profits. Non-parties Tony Ngo and Trang Le contributed $50,000, for a 12.25% share of profits; and non-parties Tien Ngo and Dung Dinh contributed $30,000, for a 12.25% share.

We conclude that the evidence conclusively supports the conclusion that all parties contributed money to the business in exchange for a share of anticipated profits proportionate to their contribution.

Thus, evidence supported all five factors to be considered in determining the existence of a partnership. Accordingly, this case falls near the top of the continuum

25

supporting the finding of a partnership. *See Rojas*, 393 S.W.3d at 841. We conclude that sufficient evidence exists to support the jury's findings that the parties created a general partnership.

We overrule Appellants' first issue.

## C. Breach of the Partnership Agreement and Breach of Statutory Duties of Partners

### *1. Breach of Terms of Partnership Agreement*

In their second issue, Appellants contend that Appellees failed to present legally sufficient evidence that Appellants breached a contract with Appellees. In their fourth issue, Appellants contend that Appellees failed to present sufficient evidence that they suffered any damages for breach of contract. We consider these issues together as issues going to breach of the terms of the partnership agreement. In their third issue, Appellants argue that Appellees failed to present legally sufficient evidence "to show any damages for breach of a partnership agreement." Because Appellants' breach of the partnership agreement was the subject of Appellees' breach of contract claim, we construe this complaint as a complaint that Appellees presented insufficient evidence that they suffered any damages for breach of partnership duties.

Questions Number One and Four of the jury charge asked whether any Appellants agreed with Hoang and Le that they would have a 25% interest and a 15.6% interest, respectively, in the chicken farm business. The jury answered that

all three Appellants had made such an agreement with Hoang and Le. The jury then found that each Appellant had failed to comply with the agreement with Hoang and Le. The charge then asked, "What sum of money, if any, if paid now in cash would fairly and reasonably compensate Hoang [and Le] for [their] damages, if any, that resulted from the failure to comply with the parties' agreement?" The charge instructed the jury to consider, as the element of damages, the proceeds from the chicken farm business owed to Hoang and Le. The jury answered $93,109.75 for Hoang and $72,170.48 for Le.

Generally, a partnership agreement "governs the relations of the partners and between the partners and the partnership." TEX. BUS. ORGS. CODE ANN. § 152.002(a) (West Supp. 2016). However, section 152.002(b) provides that, among other things, a partnership agreement may not "unreasonably restrict a partner's right of access to books and records" of the partnership and may not eliminate the statutory duties of loyalty and care or the obligation of good faith. *Id.* § 152.002(b)(1)–(4).

The Business Organizations Code provides that "[e]ach partner has equal rights in the management and conduct of the business of a partnership," that "a partner may use or possess partnership property only on behalf of the partnership," and that a partner "is not entitled to receive compensation for services performed for a partnership other than reasonable compensation for services rendered in winding

up the business of the partnership." *Id.* § 152.203(a)–(c) (West 2012). However, a partner who "in the proper conduct of the business of the partnership" or to preserve its business or property reasonably makes a payment or advance beyond the amount he agreed to contribute or reasonably incurs a liability is entitled to be repaid and to receive interest from the date of the payment or advance or the incurrence of the liability. *Id.* § 152.203(d). Generally, a partner is not entitled to compensation for services rendered to the partnership business unless there has been an agreement with respect to the rendition of those services. *See Stanley v. Reef Securities, Inc.*, 314 S.W.3d 659, 668 (Tex. App.—Dallas 2010, no pet.). "Under appropriate circumstances," courts will enforce "an agreement for compensation, express or implied," but "appropriate circumstances generally require a showing that the partner seeking compensation devoted time and attention to the partnership that was not anticipated at the time the partnership was formed." *Id.*

A partner may maintain an action against another partner for legal or equitable relief, including an accounting of partnership business, to enforce a right under the partnership agreement or a statutory right under the GPA. TEX. BUS. ORGS. CODE ANN. § 152.211(b) (West 2012). To be entitled to judgment on their breach of contract claim, or breach of the terms of the partnership agreement, Appellees were required to establish (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiffs; (3) breach of the contract by the defendants;

28

and (4) damages sustained as a result of the breach. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). "A breach of contract occurs when a party fails or refuses to do something he has promised to do." *Id.* (quoting *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)).

Here, there was no written partnership agreement. However, the evidence establishes that the parties all agreed that they would share the profits of the chicken farm business in proportion to their initial contribution toward the down payment on the Georgia Farm. The evidence also shows that the parties had a family meeting before purchasing the Georgia Farm and that they all agreed that the parties who worked at the farm would receive a monthly salary. They likewise agreed that they would work at the First Texas Farm and would receive a salary for their work on that farm.

Appellant Ngo testified that the parties never mentioned anything about paying his and Nguyen's labor costs. However, he also testified that they both received $500 in salary for the first couple of months' labor at the Georgia Farm, then raised their salary to $1,500 a month but stopped paying themselves a salary when the business's income fell to a level barely able to cover expenses. Ngo and Nguyen invested the amount they would have paid themselves to construct two

additional chicken houses on the Georgia Farm. They likewise did not pay themselves a salary for the first year at the First Texas Farm and withheld 20% of the profits from the sale of the First Texas Farm to compensate themselves for their labor on that farm, but they did not tell the other parties they were withholding that amount prior to the distribution of profits.

Appellees testified that the parties did not have an agreement that Appellant Ngo could withhold a portion of the profits to compensate himself and Nguyen for their labor on either the Georgia Farm or the First Texas Farm. Ngo agreed that the parties did not have a specific agreement to allow him to withhold these amounts, although he also testified that he believed that he was justified in withholding these amounts because he and Nguyen went for long stretches of time without drawing a salary and they undertook the greatest risk concerning the amounts borrowed from the banks.[5]

Appellees also presented evidence that, in making the final distribution, Ngo withheld $67,302 for labor costs on the Georgia Farm and $305,137 for labor costs on the First Texas Farm, for a total of $372,439 withheld in labor costs. The total amount of labor costs withheld multiplied by 25%—representing Hoang's interest—

---

[5]     On appeal, Appellants assert that Andy Ngo and Nguyen were entitled to these amounts under a quantum meruit theory as compensation for the reasonable value of their services to the chicken farm business. Appellants, however, did not assert a counterclaim for quantum meruit or otherwise argue that they were entitled to these amounts under this theory at trial.

is $93,109.75, which corresponds to the jury's answer to Question Number Three. The total amount of labor costs multiplied by 15.6%—representing Le's interest— is $58,100.48. In Question Number Six, the jury awarded Le a total of $72,170.48.

Appellee Le presented evidence that her $50,000 initial contribution came entirely from her funds and that Tuan Ngo, her boyfriend at the time and Appellant Ngo's brother, did not contribute any funds to the down payment on the Georgia farm. She testified that when making the final distribution, Appellant Ngo mistakenly divided her share of the profits between herself and Tuan Ngo, and that she received about half of the profits that she should have received. She thus presented evidence that Tuan Ngo did not contribute any funds to the down payment, that Tuan Ngo was not entitled to any portion of the final distribution of profits, and that, therefore, to the extent that Ngo divided her 15.6% portion of the distribution between her and Tuan Ngo, this was improper. The jury reasonably could have considered this evidence, in addition to evidence relating to Le's proportionate share of the amount improperly withheld as labor costs, when determining the amount that would compensate Le for her damages as a result of Appellants' failure to comply with the parties' agreement that Le would have a 15.6% interest in the chicken farm business.[6] *See Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San

---

[6] In their fourth issue, Appellants argue that the "evidence is insufficient to show any damages for breach of contract," and they argue that the withholding of labor costs, the withholding of capital gains taxes, and the distribution of some profits to Tuan

Antonio 2006, no pet.) ("The jury generally has broad discretion to award damages within the range of evidence presented at trial.").

We conclude that Appellees presented sufficient evidence that Appellants breached the partnership agreement providing that Hoang would have a 25% interest in the business and Le would have a 15.6% interest and that sufficient evidence supported the jury's findings on damages. *See B & W Supply*, 305 S.W.3d at 16.

We overrule Appellants' second and fourth issues.

## 2. Breach of Statutory Partnership Duties

Questions Number Eight and Fourteen asked the jury whether any of the Appellants failed to comply with the duty of loyalty, the duty of care, the duty of utmost good faith, fairness and honesty, or the duty to disclose with respect to Hoang and Le, respectively. The charge instructed the jury:

> Did any party listed below fail to comply with one or more of the following duties as to Hoang [or Le]?
>
> Duty of loyalty. A partner's duty of loyalty includes:
>
> a) accounting to and holding for the partnership all property[,] profit, or benefits derived by the partner in conducting and winding up the partnership business or from use by the partner of partnership property.

---

Ngo did not constitute a breach of contract. Appellants did not challenge the specific amount awarded to Appellees as breach of contract damages, and they presented no argument that this specific amount was against the great weight and preponderance of the evidence.

b) refraining from dealing with the partnership on behalf of a person who has an interest adverse to the partnership; and

c) refraining from competing or dealing with the partnership on behalf of a person who has an interest adverse to the partnership[.]

Duty of care. A partner's duty of care to the partnership and the other partners is to act in the conducting and winding up of the partnership business with the care that an ordinary prudent person would exercise in similar circumstances. An error in judgment does not by itself constitute a breach of the duty of care.

Duty of utmost good faith, fairness and honesty. Partners owe a duty of utmost good faith, fairness, and honesty in dealings with each other on matters pertaining to the enterprise.

Duty to disclose. Partners owe each other a duty of full disclosure of all matters affecting the partnership.

The jury answered that all three Appellants failed to comply with one or more of these duties with respect to both Hoang and Le. Questions Number Nine and Fifteen asked the jury what sum of money would fairly and reasonably compensate Hoang and Le for their damages that resulted from Appellants' breach of duty. The jury answered $212,208 for Hoang and $132,418.26 for Le.

A partner owes to the partnership and to the other partners a duty of loyalty and a duty of care. TEX. BUS. ORGS. CODE ANN. § 152.204(a) (West 2012). The partner is required to discharge the duties under the GPA and the partnership agreement and to exercise any rights and powers in the conduct of the partnership business in good faith and in a manner the partner reasonably believes to be in the

best interest of the partnership. *Id.* § 152.204(b). A partner does not violate such a duty merely because his conduct furthers his own interest. *Id.* § 152.204(c). And a partner, merely in his capacity as a partner, is not held to the standard of a trustee. *Id*. § 152.204(d). Partners have obligations of loyalty to the common enterprise and of the utmost good faith, fairness, and honesty in their dealings with each other in respect to the enterprise, especially the party entrusted with conduct of the enterprise. *Maykus v. First City Realty & Fin. Corp.*, 518 S.W.2d 887, 892 (Tex. Civ. App.—Dallas 1974, no writ). In particular, a managing partner has a duty to administer the partnership affairs solely for the benefit of the partnership and may not place himself in a position where it benefits him to violate this duty. *Welder v. Green*, 985 S.W.2d 170, 175 (Tex. App.—Corpus Christi 1998, pet. denied); *Hawthorne v. Guenther*, 917 S.W.2d 924, 934 (Tex. App.—Beaumont 1996, writ denied).

A partner's duty of loyalty includes "accounting to and holding for the partnership property, profit, or benefit derived by the partner" both in the conduct and winding up of the partnership business and from the partner's use of partnership property. TEX. BUS. ORGS. CODE ANN. § 152.205(1) (West 2012). A partner may not compete or deal with the partnership in a manner adverse to the partnership. *Id.* § 152.205(3). Similarly, a partner's duty of care to the partnership and the other partners requires that he act in the conduct and winding up of the partnership business with the care of an ordinarily prudent person in similar circumstances. *Id.*

§ 152.206(a) (West 2012). He is presumed to satisfy this duty if he acts on an informed basis and exercises his rights and powers under the GPA and the partnership agreement in good faith and in a manner he reasonably believes to be in the best interest of the partnership. *Id.* § 152.206(b). A partner is liable to a partnership and the other partners for a breach of the partnership agreement or a violation of a duty to the partnership or other partners under the GPA that causes harm to the partnership or the other partners. *Id.* § 152.210 (West 2012).

After the partnership terminates, the duty to a partner is limited to matters relating to winding up of the partnership's affairs, and a person has no duty to offer his former partners or partnership a business opportunity which arises after the partnership has terminated. *M.R. Champion v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995). On termination of the partnership, the confidential relationship ceases and each person is free to act in his own interest. *See Maykus*, 518 S.W.2d at 892 ("[S]o long as a joint venture or partnership continues, the participants have a confidential relationship, even though either may terminate the project at will.").

Here, it is undisputed that, as they did when they sold the Georgia Farm and purchased the First Texas Farm, Appellants did not pay capital gains taxes on the sale of the First Texas Farm, but they instead conducted a "section 1031 exchange" when they purchased the Second Texas Farm which allowed them to defer their

capital gains tax liability.[7]  Appellees were not involved with the purchase and operation of the Second Texas Farm.  It is undisputed that the First Texas Farm sold for $6,930,000.  It is also undisputed that, in addition to deductions for the value of the loan to purchase that property and for the initial down payment on the property, Appellant Ngo, when making the final distributions, withheld $305,137 representing his and Hoang's labor costs for the First Texas Farm and $543,698 to cover capital gains taxes for the farm, for a total amount withheld of $848,835.  $848,835 multiplied by 25%—representing Appellee Hoang's interest—equals $212,208, the amount that the jury awarded to Hoang for Appellants' breach of partnership duties.  $848,835 multiplied by 15.6%—representing Appellee Le's interest—equals $132,418.26, the amount that the jury awarded to Le for breach of partnership duties.

Appellees thus presented evidence that, in making the final distributions, Andy Ngo withheld funds for "taxes," but that Appellants did not pay capital gains taxes on the First Texas Farm when they sold that property.  Instead, Appellants used part of their distribution to make the down payment on the Second Texas Farm, a

---

[7]    "Section 1031 exchange" refers to Internal Revenue Code Section 1031.  This section states: "No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property of like kind which is to be held either for productive use in a trade or business or for investment."  26 U.S.C. § 1031(a)(1); *see Tukua Invs., LLC v. Spenst*, 413 S.W.3d 786, 792 n.2 (Tex. App.—El Paso 2013, pet. denied) ("Under Section 1031 of the U.S. Internal Revenue Code, a seller of real property may avoid capital gains tax by exchanging the sold property for a property of 'like-kind' within 180 days of the sale.").

business venture that did not include Appellees. Appellees also presented evidence, as we have discussed above, that Ngo withheld 20% of the profits from the chicken farm business to pay himself and Nguyen for past labor costs, despite having had family meetings in which the parties discussed salaries for those who worked at the farms, including Ngo and Nguyen.[8] Appellant Ngo did not inform Appellees that he was withholding 20% of the profits to cover his and Nguyen's labor costs until he made the distribution of profits. We therefore hold that some evidence supports the jury's award of damages to both Hoang and Le for Appellants' breach of partnership duties.

We overrule Appellants' third issue.

### D. Vu's Liability

In their sixth issue, Appellants contend that the evidence is legally insufficient to establish Vu's liability because Appellees presented no evidence that she was involved in making any decisions concerning distribution of the proceeds or concerning withholding funds to satisfy the tax liability and because she could not be held liable to Appellees solely because she is Nguyen's wife.

---

[8] Appellants Ngo and Nguyen testified that they had stopped paying themselves a salary after several months of operating the Georgia Farm and for the first year of operating the First Texas Farm in an effort to save money and reinvest those funds into covering expenses and expansion of the business. Appellants did not inform Appellees of this decision regarding their salaries.

37

Appellants argue, instead, that the evidence demonstrates only that Vu "is married to Appellant Nguyen, she provided financial support to the chicken farm in Georgia with funds she earned in her business, and she was a signatory on the title documents for the farms and on the loan documents with the lenders." In Questions Number Seven and Thirteen, the jury expressly found that all three Appellants, including Appellant Vu, created a partnership with both Hoang and Le. Thus, the jury found that Vu, like her husband Nguyen and Appellant Ngo, was a partner in the partnership. We have held that sufficient evidence supports these jury findings.

In breach of contract actions, one partner may ratify the acts of another partner, whether those acts are authorized or unauthorized, and ratification may be inferred by the silence of the non-participating partner. *See Shindler v. Marr & Assocs.*, 695 S.W.2d 699, 705 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). As the Texas Supreme Court has stated, "A nonparticipating partner is ordinarily not personally liable for the wrongful, tortious or criminal acts of the acting partner *unless* such acts are within the scope of the partnership's business or were consented to, authorized, ratified or adopted by the non-participating partner." *K & G Oil & Tool Serv. Co. v. G & G Fishing Tool Serv.*, 314 S.W.2d 782, 793 (Tex. 1958) (emphasis added); *see also Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716, 719 (Tex. 1971) (citing *K & G Oil & Tool Service* with approval but holding, in that case, that partner's actions were "solely for his own personal gratification" and any

consent inferred from silence or inaction of Clinic did not render Clinic vicariously liable to plaintiff), *superseded by statute on other grounds as stated in Helena Lab. Corp. v. Snyder*, 886 S.W.2d 767, 768 (Tex. 1994) (per curiam).

Here, the jury found that Appellant Vu was a partner in the chicken farm business, and we have held that sufficient evidence supports this finding. Although the evidence reflects that Appellant Ngo, on his own, made the calculations concerning the specific amounts to withhold and the specific amounts to distribute to Appellees, Appellant Ngo testified that he, Nguyen, and Vu all made the decision to sell the First Texas Farm, distribute the proceeds, and purchase the Second Texas Farm without the involvement of Appellees. Ngo's actions in withholding labor costs increased the share that Nguyen, Vu's husband, received in the distribution, and his actions in withholding capital gains taxes also increased the share that all three Appellants received, which they then used to purchase the Second Texas Farm. Thus, Vu benefitted from Ngo's actions in making the distribution, and, by agreeing with Ngo and Nguyen to wind up the partnership and make the distribution, she consented to and ratified the actions of Ngo, her fellow partner. *See Shindler*, 695 S.W.2d at 705.

Vu's liability to Appellees stems from her status as a partner in the partnership who consented to and ratified Appellant Ngo's actions, and not merely from her status as Appellant Nguyen's wife. We hold that Appellees presented some evidence

39

that Vu is liable to Appellees for breach of the partnership agreement and breach of partnership duties, just as Appellants Ngo and Nguyen are.

We overrule Appellants' sixth issue.

## One Satisfaction Rule

In their fifth issue, Appellants contend that the trial court erred in awarding judgment on Appellees' claims for both breach of the partnership agreement and breach of the statutory partnership duties because "both causes of action arose from the same facts or events," and, thus, an award for both breach of contract and breach of partnership duties violates the one-satisfaction rule.

A party may sue and seek damages on alternative theories of liability. *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "If a plaintiff pleads alternate theories of liability, a judgment awarding damages on each alternate theory may be upheld if the theories depend on separate and distinct injuries and if separate and distinct damages findings are made as to each theory." *Id.* Courts apply the one-satisfaction rule to prevent a plaintiff from obtaining more than one recovery for the same injury. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 111 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) ("There can be but one recovery for one injury, and the fact that . . . there may be more than one theory

40

of liability[] does not modify this rule."). This rule applies when defendants commit technically different acts that result in a single injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *Krobar Drilling*, 426 S.W.3d at 111. If the alternate theories of liability depend on separate and distinct injuries resulting in separate and distinct damages, recovery under both theories of liability does not violate the one-satisfaction rule. *Cf. Saden v. Smith*, 415 S.W.3d 450, 469 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Here, the jury awarded Hoang $93,109.75 for breach of contract and $212,208 for breach of partnership duties. The jury awarded Le $72,170.48 for breach of contract—$58,100.48 of which is attributable to her 15.6% portion of the amount Appellant Ngo withheld from the distribution to pay his and Nguyen's labor costs—and $132,418.26 for breach of partnership duties. The jury arrived at its awards in favor of Hoang and Le for breach of partnership duties by taking the total amount that Andy Ngo withheld from the distribution—$848,835—and multiplying that amount by 25% and 15.6%, representing Hoang's and Le's respective interests in the partnership. The total amount that Ngo withheld included $543,698 in taxes for the First Texas Farm and $305,137 in labor costs for the First Texas Farm. The jury, however, also considered the $305,137 in labor costs for the First Texas Farm when it answered Questions Number Three and Six concerning the amounts that would reasonably compensate Hoang and Le for the Appellants' failure to comply with the

partnership agreement.  In answering those questions, the jury added together the $305,137 withheld in labor costs for the First Texas Farm and the $67,302 withheld in labor costs for the Georgia Farm—which totaled $372,439—and multiplied that amount by 25% and 15.6% to arrive at Hoang's and Le's respective damages for breach of the partnership agreement.[9]

When considering the damage awards for both breach of the partnership agreement and breach of partnership duties, we conclude that the jury twice awarded Appellees damages for Ngo's decision to withhold 20% of the profits to cover his and Nguyen's labor costs on the two farms.  The jury's award in this case allows Appellees to recover more than one award for the same injury, thus violating the one-satisfaction rule.  *See Sterling*, 822 S.W.2d at 7; *Krobar Drilling*, 426 S.W.3d at 111.

A party who seeks damages under two or more theories of recovery for a single wrong must elect, before the judgment is rendered, under which remedy he wishes the court to enter judgment.  *Star Houston, Inc. v. Shevack*, 886 S.W.2d 414, 422 (Tex. App.—Houston [1st Dist.] 1994, writ denied).  When the prevailing party fails to make that election, the trial court should utilize the findings affording the

---

[9]     As we have already discussed, 15.6% of the total amount of labor costs withheld equals $58,100.48, but the jury awarded Le $72,170.48.  The jury could have awarded the additional damages to Le as compensation for Appellant Ngo's decision to pay a part of her portion of the distribution to Tuan Ngo, her ex-boyfriend.

party the greater recovery and should render judgment accordingly. *Id.*; *see also* *Saden*, 415 S.W.3d at 465–66 ("When a defendant's acts results in a single injury, and the jury returns favorable findings on more than one theory of liability, the plaintiff is entitled to judgment on the theory affording him the greatest relief."). "Where the trial court fails to do so, the appellate court will reform the trial court's judgment to effect such an election." *Star Houston*, 886 S.W.2d at 423; *see also* *Saden*, 415 S.W.3d at 469 ("Ordinarily [upon finding a violation of the one-satisfaction rule] we would reform the judgment to effect an election of the remedy that affords the prevailing party the greatest relief.").

Here, we conclude that the cause of action affording Appellees the greater recovery is the cause of action for breach of partnership duties, under which the jury determined that Hoang is entitled to $212,208 in damages and that Le is entitled to $132,418.26 in damages. We therefore reform the judgment of the trial court to delete the awards in favor of Hoang and Le on their breach of contract claim. *See* *Star Houston*, 886 S.W.2d at 423; *cf. Saden*, 415 S.W.3d at 469.

We sustain Appellants' fifth issue.

## Conclusion

We reform the judgment of the trial court to delete the awards in favor of Appellees Hoang and Le on their claim for breach of the parties' agreement. We affirm the judgment of the trial court in all other respects.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Brown, and Huddle.