

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00697-CV

**IN RE ESTATE OF** Robert S. **CASTLEMAN**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2017-PC-1224
Honorable Veronica Vasquez, Judge Presiding

Opinion by:  H. Todd McCray, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
H. Todd McCray, Justice
Velia J. Meza, Justice

Delivered and Filed: August 27, 2025

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This appeal arises from the trial court's final judgment, entered on July 20, 2022, based on the jury's verdict, entered on May 24, 2022. On appeal, Appellants, James Roy Young ("Roy Young"), Billie Young, and Castleman & Young Construction, Inc. ("CYC"), raise twelve issues. In addition, Appellee, Billie F. Castleman, individually, as independent administratrix of the estate of Robert S. Castleman, and derivatively on behalf of CYC ("Castleman"), raises an additional issue in a cross-appeal. We will affirm in part, reverse in part, and remand for additional proceedings consistent with this opinion.

## BACKGROUND

Roy Young, Billie Young, and Robert Castleman met when Robert Castleman was 18 or 19 years old. The three became friends and, after the company that Robert Castleman worked for and the Youngs did business with went out of business, they started a business together, named Castleman & Young Construction, Inc. ("CYC"). The three friends, and Robert Castleman's wife, Billie Castleman, worked for CYC. But CYC's ownership consisted of only two parties—Roy Young, who held 51% of the company's shares, and Robert Castleman, who held 49%.

After they had been in business for some time, on June 17, 2003, Roy Young, Robert Castleman, and CYC entered into an "Agreement Among Shareholders and Corporation to Purchase Shares of Deceased Shareholder" (the "Shareholder Agreement"). The Shareholder Agreement established the rights and duties of Roy Young, Robert Castleman, and CYC in the event that either Roy Young or Robert Castleman passed away.[1]

On February 1, 2017—nearly fourteen years after signing the Shareholder Agreement, and nearly 40 years after meeting the Youngs, Robert Castleman passed away at the age of 56.

After Robert Castleman's death, Billie Castleman filed an Application to Determine Heirship and For Letters of Independent Administration on April 4, 2017. The case was filed in Probate Court Number 2 of Bexar County and assigned cause number 2017PC1224.

On May 25, 2018, Castleman filed an original petition, naming the Youngs as the defendants and alleging a number of claims, including breach of fiduciary duty and breach of

---

[1] The agreement states that it "shall be interpreted in accordance with and governed by the laws of the State of Tennessee applicable to agreements made and to be performed entirely within such state." Neither party, however, has either argued or offered any evidence to show that Tennessee law differs from Texas law, nor has either party requested that either the trial court or this court take judicial knowledge of Tennessee's law. Accordingly, we presume Tennessee law is the same as Texas law. *See Vince Poscente Internat'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 219 (Tex. App.—Dallas 2015, no pet.); *Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 290 (Tex. App.—Fort Worth 2007, pet. withdrawn).

contract. This pleading initiated a new case, which was filed in the 224th Judicial District Court in Bexar County and was assigned cause number 2018CI09745.

On June 13, 2018, CYC filed a first amended petition in intervention in the probate proceeding, asserting causes of action against Castleman for tortious interference with contract, breach of fiduciary duty, and breach of contract.

On July 9, 2018, the Youngs filed an answer in the district court case, asserting a general denial, that Castleman lacked standing, that Castleman lacked authority, and that Castleman's claims were barred by the statute of limitations.

On June 7, 2019, Castleman's original petition was transferred to the probate court and was consolidated with the probate proceedings.

The Youngs and CYC filed a supplemental answer on January 17, 2020, asserting the affirmative defenses of prior material breach and repudiation.

The case was tried to a jury from May 17, 2022, through May 20, 2022, and from May 23, 2022, through May 24, 2022.

The trial court entered final judgment on July 20, 2022.

The Youngs and CYC timely appealed on October 21, 2022.[2] Castleman also timely filed a notice of appeal, on October 28, 2022.[3]

## DISCUSSION

In their appellants' brief, the Youngs and CYC raise twelve points of error. In addition, Castleman raises one point of error in her appellee's and cross-appellant's brief.

---

[2] *See* TEX. R. APP. P. 26.1(a), 26.3.
[3] *See* TEX. R. APP. P. 26.1(d).

*A. Is Roy Young Responsible for CYC's Salary and Contractual Obligations?*

In their first two issues, the Youngs and CYC argue that the trial court erred by awarding damages to Castleman based on the allegation that the Youngs breached a contract with Robert Castleman. Specifically, the Youngs and CYC argue that, although CYC had a duty to pay Castleman for any unpaid salary that he had earned and had a contractual obligation to distribute to Castleman the "pro-rata share of the 'net income' on any completed jobs or works in progress as of the date of" Robert Castleman's death, the Youngs had no contractual obligation to pay Castleman anything. Thus, according to the Youngs and CYC, the trial court erred by awarding contractual damages against Roy Young.

1. Standards for Contract Interpretation

"[T]he construction of a contract present[s] [a] question[] of law we review de novo." *Sundown Energy LP v. HJSA No. 3, L.P.*, 622 S.W.3d 884, 888 (Tex. 2021). Our primary concern when construing a contract is to effectuate the written expression of the parties' intent. *See id*. We must construe the contract's terms in the way they are used, and we may not render contractual language meaningless. *See id*.

2. Background

Under the terms of the Shareholder Agreement, CYC was obligated to make certain distributions upon the death of a shareholder.

**Section 9. Distributions Following the Death of a Shareholder**

Upon the death of a Shareholder, the Corporation shall distribute to the Trustee or the Personal Representative of the Shareholder's estate the deceased Shareholder's pro-rata share of the "net income" on any completed jobs or any work in progress as of the date of the Shareholder's death. The deceased Shareholder's pro-rata share of the "net income" shall be determined by the Corporation's accountant on a percentage of completion basis under generally accepted accounting principles.

The record shows Robert Castleman was a shareholder in and employee of CYC, such that at the time of his death, the obligations under this provision were triggered.

Castleman brought suit against the Youngs on May 25, 2018. [CR 565] In her petition, Castleman pleaded a cause of action for breach of contract, which included claims for unpaid salary and the estate's portion of the profits from work completed by CYC prior to her husband's death.[4]

While the Youngs and CYC raised several affirmative defenses in their pleadings, including claims of prior material breach and repudiation, they did not raise any claims based on a defect of parties or a defect of capacity. Nevertheless, the Youngs and CYC contended, at trial, that Castleman only pleaded a breach of contract action against Roy Young, that she did not plead a breach of contract claim against CYC, and that the breach of contract claims would need to be brought against CYC.

The trial court, however, found "that pursuant to Texas Rules of Civil Procedure Number 93, Mr. Young has waived his objection to the capacity in which he has been sued"—a finding that the Youngs and CYC do not contest on appeal. Additionally, when counsel for the Youngs and CYC argued that Castleman, in the context of a breach of contract claim, "did not bring a claim against the corporation," Castleman responded that counsel for the Youngs and CYC was "trying to raise affirmative defenses now that he didn't plead. Affirmative defenses must be pled. They are waived. Any of his affirmative defenses – statute of frauds, affirmative defense, waived, even if it exists."

At the conclusion of the trial, the trial court awarded breach of contract damages for Castleman against Roy Young.

---

[4] The Youngs filed an answer on July 9, 2018. In addition, CYC filed a first amended petition in intervention on June 13, 2018. The Youngs and CYC also filed a supplemental answer on January 17, 2020.

3. Shareholder Responsibility for Corporate Obligations

"A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations." *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). As a result, individuals who hold shares of corporations are generally not personally liable for the corporation's contractual debts. *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a); *Willis*, 199 S.W.3d at 271; *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App.—El Paso 2010, no pet.); *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.—Dallas 2007, no pet.). Further, a party who seeks to hold a shareholder personally liable for a corporation's contractual obligations must specifically plead and prove a basis for disregarding the corporate fiction or must establish that the shareholder assumed, guaranteed or otherwise agreed to be personally liable for the obligation. *See* TEX. BUS. ORGS. CODE ANN. §§ 21.223(a)(2), (b), 21.224, 21.225; *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508, 523, 524 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd); *Morris v. Powell*, 150 S.W.3d 212, 219 (Tex. App.—San Antonio 2004, no pet.).

Nevertheless, a party's "contention that he acted only through the corporation and not individually is an affirmative defense under Rule 93." *Gray v. West*, 608 S.W.2d 771, 778 (Tex. Civ. App. 1980, writ ref'd n.r.e.); *see* TEX. R. CIV. P. 93(2); *Pledger v. Schoellkopf*, 762 S.W.2d 145, 145–46 (Tex. 1988); *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 922 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Similarly, a party's contention that a plaintiff sued the wrong party, including a contention that a plaintiff should have sued a corporation, rather than an individual shareholder, is also an affirmative defense under Rule 93. *See* TEX. R. CIV. P. 93(4); *CHCA E. Hous., L.P. v. Henderson*, 99 S.W.3d 630, 632–34 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Matthiessen v. Schaefer*, 900 S.W.2d 792, 794–95 (Tex. App.—San Antonio 1995,

writ denied); *Beacon Nat'l Ins. Co. v. Reynolds*, 799 S.W.2d 390, 395 (Tex. App.—Fort Worth 1990, writ denied). Further, either of these affirmative defenses must be raised by verified denial and is waived if not so raised. *See* TEX. R. CIV. P. 93; *Pledger v. Schoellkopf*, 762 S.W.2d at 146; *Henderson*, 99 S.W.3d at 633; *Matthiessen*, 900 S.W.2d at 795; *Butler*, 633 S.W.2d at 922.

    4.  Discussion

In her original petition, Castleman did not plead any grounds upon which the trial court could have disregarded the corporate fiction in this case. *See Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991) (holding that the trial court's judgment could not be upheld on any theory relating to alter ego, piercing the corporate veil, or agency, because the judgment must conform to the parties' pleadings, and the plaintiff had not pleaded any of those theories). Further, at no point during the trial of this case did Castleman seek either to prove any grounds for disregarding the corporate fiction or to show that Roy Young assumed, guaranteed, or otherwise agreed to be personally liable for CYC's obligations to Robert Castleman or his estate. *See id.* ("[T]he argument that the issues were tried by implied consent fails because there is no evidence to indicate they were actually tried.").

Moreover, the Shareholder Agreement between Roy Young, Robert Castleman, and CYC clearly states that the corporation—namely, CYC—was responsible for distributing Robert Castleman's "pro-rata share of the 'net income' on any completed jobs or any work in progress as of the date of" Robert Castleman's death. After reviewing this contract, we conclude that the contract solely imposes liability on CYC, and not on Roy Young personally, to pay Robert Castleman's share of the undistributed profits to his estate. *See InvestIN.com Corp. v. Europa Int'l, Ltd.*, 293 S.W.3d 819, 826–29 (Tex. App.—Dallas 2009, pet. denied).

5. Shareholder Derivative Actions

In her appellee's brief, Castleman argues that this case involves a shareholder's derivative action against a closely held corporation, which allows her to recover damages directly from the officers, directors, and shareholders of the corporation in their individual capacities. Castleman further argues that, under section 21.563(c) of the Business Organizations Code, a trial court may treat a derivative action brought on behalf of a closely held corporation as a direct action brought by the shareholder and award a recovery directly to the plaintiff shareholder, if justice so requires. *See* TEX. BUS. ORGS. CODE ANN. § 21.563(c). Castleman therefore contends that the trial court did not abuse its discretion when it held "it was proper for Castleman to recover directly against the Youngs individually, as opposed to CYC as the Youngs' [sic] had argued."

A shareholder in a closely held corporation may bring a derivative action against other shareholders in the corporation on behalf of the corporation. *See* TEX. BUS. ORGS. CODE ANN. § 21.563; *Ritchie v. Rupe*, 443 S.W.3d 856, 880–81 (Tex. 2014); *Sneed v. Webre*, 465 S.W.3d 169, 181 (Tex. 2015). Further, "[i]f justice requires, a court may treat a derivative proceeding brought by a shareholder of a closely held corporation as if it were a direct action brought by the shareholder for the shareholder's own benefit." *Saden v. Smith*, 415 S.W.3d 450, 463 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see* TEX. BUS. ORGS. CODE ANN. § 21.563(c)(1); *Sneed*, 465 S.W.3d at 188; *Guerra v. Guerra*, No. 04-10-00271-CV, 2011 WL 3715051, at *5 (Tex. App.—San Antonio Aug. 24, 2011, no pet.) (mem. op.). "But the proceeding still must be derivative." *Sneed*, 465 S.W.3d at 188. In other words, although a trial court may treat a derivative action brought on behalf of a closely held corporation as if it were a direct action for a shareholder's benefit, the claim remains vested in the corporation and does not become an individual claim of the shareholder. *See Guerra*, 2011 WL 3715051 at *5.

Here, Castleman misconstrues the nature of a derivative action and of the breach of contract claims at issue. A shareholder's derivative action allows a shareholder to assert *the corporation's* claims against a third party—including claims against other shareholders of the corporation—and to recover *the corporation's* damages from obligees *of the corporation*; a derivative action does not transform an individual shareholder's claim *against the corporation* into a personal action against the other shareholders, nor does it render the other shareholders personally liable for the corporation's obligations.

The breach of contract claims at issue in these two points of error, however, are simply not derivative claims that Castleman asserts on behalf of CYC. Rather, the two claims at issue in the first two points of error—for unpaid salary and undistributed profits allegedly owed by CYC to the Estate of Robert Castleman—do not belong to CYC; they are claims that belong to the estate. Neither claim constitutes a claim brought *on behalf of* CYC, and neither claim involves an injury to CYC.[5] Thus, they do not constitute derivative claims.

Because the contractual claims at issue in the first two points of error are not derivative claims, Castleman could not recover on her breach of contract claims directly from Roy Young

---

[5] In her brief, Castleman argues that "[b]y failing to pay [Robert Castleman's] compensation, Roy Young caused CYC to incur $346,668 in liability to Castleman," based on Roy Young's failure to pay Castleman the unpaid salary and undistributed profits that were owed to Robert Castleman. This argument, however, misconstrues the nature of CYC's obligation. CYC owed the Estate of Robert Castleman any unpaid-but-earned salary and Robert Castleman's share of any undistributed profits *whether CYC's officers paid the compensation or not*. In other words, CYC incurred any liability to pay Robert Castleman's salary when Robert Castleman earned the salary, and it incurred any liability for unpaid profits when the work that generated the profit was performed; the liability existed regardless of whether CYC's officers and directors fulfilled CYC's obligations.

Similarly, Castleman's contention that Roy "Young essentially argues that he should be able to retain 51% of the compensation owed to Castleman" is incorrect. Castleman is construing the contractual liability claims as derivative claims by CYC against the Youngs; if the claims belonged to CYC, then Roy Young could theoretically receive 51% of the damages awarded to CYC, if the damages award was distributed by CYC to its shareholders, based on Roy Young's 51% ownership interest in CYC. But the claims do not belong to CYC, they are individual claims of Robert Castleman's estate *against* CYC. Thus, any amount owed to the estate would be paid by CYC to the estate, and no portion of it would or could be retained by Roy Young, regardless of his ownership interest in CYC, because the damages award would be paid *by* CYC, not *to* CYC.

under the theory that Castleman's claims constituted derivative claims that could be treated as a direct action against the Youngs.

6. Texas Rule of Appellate Procedure 93 and Trial by Consent

Castleman also argues, however, that "Roy Young waived his challenges in Issues 1 & 2 because he failed to file a verified denial of his individual liability," as required by Texas Rule of Civil Procedure 93.

The record in this case clearly shows that the Youngs and CYC did not file a verified pleading, or any other document, raising any alleged defect in the capacity in which Roy Young was sued or raising any alleged defect in the parties. Further, at trial, the trial court found "that pursuant to Texas Rules of Civil Procedure Number 93, Mr. Young has waived his objection to the capacity in which he has been sued"—a finding that the Youngs and CYC do not contest on appeal. Additionally, during the trial, counsel for the Youngs and CYC argued that Castleman, in the context of a breach of contract claim, "did not bring a claim against the corporation." Castleman responded that counsel for the Youngs and CYC was "trying to raise affirmative defenses now that he didn't plead. Affirmative defenses must be pled. They are waived. Any of his affirmative defenses – statute of frauds, affirmative defense, waived, even if it exists."

Because CYC and the Youngs failed to raise an affirmative defense under Rule 93, they have waived the arguments contained in their first two points of error, that the obligations to pay Robert Castleman's unpaid salary and to distribute any undistributed profits to the representative of Robert Castleman's estate were obligations of CYC, and not of Roy Young individually. *See* Tex. R. Civ. P. 93; *Butler*, 633 S.W.2d at 929–30; *Gray*, 608 S.W.2d at 778; *see also Pledger*, 762 S.W.2d at 146; *Matthiessen*, 900 S.W.2d at 794–95; *Reynolds*, 799 S.W.2d at 395.

We therefore conclude that it was not error for the trial court to award breach of contract damages in favor of Castleman against Roy Young individually.

7. Conclusion

Based on the foregoing, we overrule the Youngs and CYC's first two points of error and affirm the trial court's judgment awarding breach of contract damages to Castleman against Roy Young based on the allegations that Roy Young breached a contractual duty to pay any accrued and unpaid salary to Robert Castleman's estate and to pay any undistributed profits to the estate.

B. *Did Roy Young Exercise His Option to Purchase Castleman's Shares in CYC and then Breach His Agreement to Purchase the Shares?*

In their third point of error, the Youngs and CYC contend the trial court erred by awarding breach of contract damages against Roy Young based on Roy Young's alleged failure to purchase Robert Castleman's shares of CYC.

1. Background

In the Shareholder Agreement, Robert Castleman and Roy Young agreed as follows:

> Section 4. Death of ROBERT S. CASTLEMAN
>
> (a)     Upon the death of ROBERT S. CASTLEMAN, JAMES R. YOUNG shall have the option to purchase and the Personal Representative or Trustee of ROBERT S. CASTLEMAN's estate shall sell, upon the exercise of such option, all the shares of the Corporation owned by ROBERT S. CASTLEMAN at his death, for the purchase price set forth in Section 6. hereof and on the terms of purchase set forth in Section 8. hereof. The exercise of such option shall take place, if at all, within two months of the date of ROBERT S. CASTLEMAN's death, by written notice delivered to the Personal Representative or Trustee of ROBERT S. CASTLEMAN's estate. The settlement date for such purchase shall be such date as may be mutually agreed upon by JAMES R. YOUNG and the Personal Representative or Trustee of ROBERT S. CASTLEMAN's estate, but in no event shall the date of settlement be later than the 60th day following the date upon which such written notice exercising the option is delivered to the Personal Representative or Trustee of ROBERT S. CASTLEMAN's estate.

Robert Castleman and Roy Young further agreed that (1) CYC would purchase the shares if Roy Young did not exercise his option to purchase the shares, and (2) the purchase price for all the shares held by Robert Castleman would be $200,000. Finally, the Shareholder Agreement allowed the shareholders or CYC to obtain life insurance policies insuring either or both of Robert Castleman and Roy Young, for the purpose of funding the obligations under the Shareholder Agreement, and required the party purchasing the shares, whether CYC or Roy Young, to "pay the greater of (i) fifty percent (50%) of the aggregate purchase price or (ii) all life insurance proceeds, if any, that are received by the Purchaser as a lump sum payment" on the settlement date.

At trial, Castleman offered a letter from the Youngs' attorney, Michael R. Gilroy, which was admitted into evidence. In the letter, which was dated March 31, 2017—60 days after Robert Castleman's death, Roy Young's counsel states, "This is official notice that Roy Young and his various Trusts are electing to purchase Robert Castleman's interest in the Company due to his recent death."

Castleman further offered, and the trial court admitted, an email chain containing an October 31, 2017, email from Anthony Arguijo, counsel for Roy Young, stating that "Mr. Young exercised his option to purchase Mr. Castleman's interest in the company" in a March 31, 2017, letter and seeking "to close out the buy/sell agreement."

2. Discussion

"Acceptance of an option, unless excused in rare cases of equity, must be unqualified, unambiguous, and strictly in accordance with the terms of the agreement." *Crown Constr. Co. v. Huddleston*, 961 S.W.2d 552, 558 (Tex. App.—San Antonio 1997, no pet.).

Here, Roy Young, acting through counsel, notified Castleman on March 31, 2017, that he was electing to purchase Robert Castleman's shares in CYC. This notice was timely, was in

accordance with the terms of the Shareholder Agreement, was unqualified, and was unambiguous.[6] As a result, Roy Young exercised his option under the Shareholder Agreement and was contractually bound to purchase Robert Castleman's shares of CYC from his estate. *See Huddleston*, 961 S.W.2d at 558; *Durrett Dev., Inc. v. Gulf Coast Concrete, LLC*, No. 14-07-01062-CV, 2009 WL 2620506, at *2, *6 (Tex. App.—Houston [14th Dist.] Aug. 27, 2009, no pet.) (mem. op.) (holding that language stating that "Tenant hereby gives its written notice to Landlord of Tenant's elections to exercise its option to purchase the Leased Premises" was effective to exercise an option); *Tye v. Apperson*, 689 S.W.2d 320, 322, 324 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.) (holding that acceptance of option through attorney was effective); *Farrell v. Evans*, 517 S.W.2d 585, 589 (Tex. App.—Houston [1st Dist.] 1974, no writ) (same).

In addition, under the terms of the Shareholder Agreement, the settlement date for Roy Young's purchase of the shares could not be later than May 30, 2017—60 days after March 31, 2017, the date on which Roy Young gave notice of his election to purchase. The evidence showed, however, that, at least as of the October 31, 2017, email, Roy Young had not purchased Robert Castleman's shares.

Accordingly, we conclude that the trial court did not err by awarding breach of contract damages against Roy Young based on his failure to purchase Robert Castleman's shares of CYC, and we overrule the third point of error.

---

[6] In their appellate brief, the Youngs and CYC argue that the statement in the letter is not "positive, unqualified, unequivocal" because "the letter states 'the Company will redeem the shares if Roy Young does not indeed purchase [the shares] by the contractual deadline.'" This statement, however, neither qualifies the previous sentence, in which Roy Young unambiguously and without qualification stated he was electing to purchase the shares, nor makes the previous sentence ambiguous. Rather, this subsequent statement merely states that CYC will purchase the shares if Roy Young fails to comply with the contract, despite the fact that Roy Young's election to purchase the shares negates any responsibility on behalf of CYC to purchase the shares, given that the contract only imposed an obligation on CYC to purchase the shares "[i]f ROY YOUNG fail[ed] to exercise" his option to purchase.

C. *Did the Trial Court Properly Award Actual and Punitive Damages Directly to Castleman Based on the Youngs' Breach of their Fiduciary Duties to CYC?*

In their fourth and fifth points of error, the Youngs and CYC argue the trial court erred by awarding damages directly to Castleman based on the juries' findings that the Youngs breached their fiduciary duties to CYC, that there were no jury charge questions asking the jury to determine whether the Youngs breached any duties owed to Castleman, and that any award of damages must be to CYC, not to Castleman. Specifically, the Youngs and CYC argue that there is no fiduciary duty between shareholders of a closely held corporation, the Youngs' fiduciary duties were owed to CYC, the jury charge only asked if the Youngs failed to comply with a duty to CYC, and Castleman failed to obtain any jury charge questions that would have allowed for direct recovery from the Youngs under section 21.563 of the Business Organizations Code.

Under section 21.563, a trial court, if justice requires, may treat "a derivate proceeding brought by a shareholder of a closely held corporation . . . as a direct action brought by the shareholder for the shareholder's own benefit." TEX. BUS. ORGS. CODE ANN. § 21.563(c)(1). Further, "if justice requires . . . a recovery in a . . . derivative proceeding by a shareholder may be paid directly to the plaintiff or to the corporation if necessary to protect the interests of creditors or other shareholders of the corporation." *Id*. § 21.563(c)(2); *see Ritchie*, 443 S.W.3d at 881. "The decision whether justice requires the shareholder to recover directly under this statute is a matter left to the trial court's discretion." *Guajardo v. Hitt*, 562 S.W.3d 768, 781 (Tex. App.—Houston [14th Dist.] 2018, pet. denied.).

In this case, there were only two shareholders of CYC—Roy Young and Robert Castleman. After Robert Castleman's death, his shares of CYC were held by Billie Castleman, as administratrix of his estate, until such time as either Roy Young or CYC, as applicable under the Shareholder Agreement, purchased the shares. As a result, CYC was a "closely held corporation,"

and the decision regarding whether to allow Castleman to recover directly from Roy Young was within the trial court's discretion. *See* TEX. BUS. ORGS. CODE ANN. § 21.563(c)(2); *Guajardo*, 562 S.W.3d at 781.

In their brief, the Youngs and CYC present neither substantive legal argument nor citations to applicable authority to show that the trial court either lacked discretion to award, or abused its discretion by awarding, actual and punitive damages to Castleman based on the Youngs' breach of their fiduciary duties to CYC. Further, to the extent the Youngs and CYC argue that "there are threshold issues that are required to be included in additional jury charge questions that were not asked," they once again fail to provide substantive legal analysis or citations to applicable authority to show either that the relevant findings under section 21.563 must be made by the jury, rather than the trial court, or that the necessary findings are not elements of the breach of fiduciary duty claims that were omitted from the charge and have now been "deemed found by the court in such manner as to support the judgment" under Texas Rule of Civil Procedure 279. TEX. R. CIV. P. 279; *see K-Bar Servs., Inc. v. English*, No. 03-05-00076-CV, 2006 WL 903735, at *4–5 (Tex. App.—Austin April 7, 2006, no pet.) (mem. op.); *Kim*, 320 S.W.3d at 376; *Guajardo*, 562 S.W.3d at 781.

We overrule issues four and five. *Cf. Saden v. Smith*, 415 S.W.3d 450, 465 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that "recovery could be paid to [one shareholder] directly to protect his interests" when that shareholder was injured by the wrongful conduct of the only other shareholder and the other shareholder benefitted from the misconduct).

### D. Did the Evidence Fail to Support the Damages Award Against Each Defendant Individually?

In their sixth point of error, the Youngs and CYC argue that the evidence related to damages was legally insufficient, because Castleman was "required to present evidence of

damages proximately caused by each defendant" but Castleman failed to distinguish the damages caused by each of the Youngs.

1. Background

At trial, Billie Young testified that Roy Young would use CYC funds, primarily through CYC's American Express credit card, to purchase sandwiches, biscuits, and food for various parties, including the company's workers and workers for a different business owned by the Youngs. She further testified that CYC never had a job in Eads, Tennessee, where the Youngs lived and where they purchased the food she had stated was for their workers. In addition, she testified that both she and Roy Young had purchased gas that was paid for by CYC. Finally, she testified that Roy Young purchased food for persons he knew that were working in the area, whether they worked for CYC or not, and charged the expense to CYC.

Similarly, Roy Young testified that food for various people was paid for by CYC. He also testified that he purchased food, which was paid for by CYC, and that purchasing the food could lead to people being a reference for his construction company or his iron company. He specifically confirmed that he purchased food with CYC funds that benefitted his iron company.

Finally, Castleman's expert, Kimberly Ford, testified that the Youngs paid for a number of expenses with CYC's funds, either by writing checks on CYC's bank account or by charging the expenses to CYC's American Express account, which were not business expenses. Moreover, Ford's report, showing that the Youngs paid for personal expenses with CYC's funds, was admitted into evidence.

2. Discussion

At trial, the jury determined that Roy Young breached his fiduciary duty to CYC by engaging in self-dealing. Similarly, the jury determined that Billie Young breached her fiduciary

duty to CYC by engaging in self-dealing. As a result, the jury was asked to determine what percentage of liability they attributed to each of the Youngs individually for their breaches of fiduciary duty. The jury was also asked to separately determine the specific sums of money that would compensate CYC for the breach of fiduciary duty by Roy Young and for the breach of fiduciary duty by Billie Young. Thus, "the jury was asked to award divisible or separate damages, not individual or total damages." *Dana Corp. v. Microtherm, Inc.*, No. 13-05-00281-CV, 2010 WL 196939, at *20 (Tex. App.—Corpus Christi-Edinburgh Jan. 21, 2010, pet. granted, judgment vacated w.r.m.) (mem. op.).

Further, Castleman "had both the opportunity and the burden at trial to develop [her damages]—divisible among the defendants. [She] did not." *Id.*; *see Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 739 (Tex. 1997) (remanding case to allow the plaintiffs to develop their damages evidence to establish proper segregation of damages). Instead, Castleman produced evidence (1) showing that both Roy Young and Billie Young had paid for non-business expenses with CYC's funds and (2) showing the total amounts of CYC's funds that the Youngs expended, but Castleman did not provide sufficient evidence to show the amount of CYC's funds expended by either Roy Young or Billie Young.[7] In other words, Castleman "provided no evidence of the divisible damages awarded." *Dana Corp.*, 2010 WL 196939, at *20.

Although the jury assigned a percentage of liability to each of the Youngs and determined a specific amount of money that would fairly compensate CYC for the breaches of duty by each of the Youngs individually, "it is axiomatic that a jury must have an evidentiary foundation on which to base its findings." *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 841 (Tex.

---

[7] Although Roy Young only testified that he made purchases for food that was paid for by CYC and Billie Young testified that the purchases paid for by CYC were primarily made by Roy Young, there was no evidence to show the amounts of any purchases by either Roy Young or Billie Young individually.

1997); *see City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005) ("In claims or defenses supported only by meager circumstantial evidence, the evidence does not rise above a scintilla (and thus is legally insufficient) if jurors would have to guess whether a vital fact exists."). The record demonstrates no support or basis for the jury's determination and assignment of responsibility as between the Youngs. We therefore find the evidence insufficient to support the jury's damages award on the breach of fiduciary duty claims.[8]

3. Disposition of the Breach of Fiduciary Duty Claims

Generally, when an appellate court finds the evidence legally insufficient to support a damages verdict, the court reverses and renders a take-nothing judgment. *See Rojas v. Duarte*, 393 S.W.3d 837, 846 (Tex. App.—El Paso 2012, pet. denied); *Ford Motor Co. v. Cooper*, 125 S.W.3d 794, 804 (Tex. App—Texarkana 2004, no pet.). An appellate court may, however, reverse and remand a case for a new trial, if the appellate court determines that the interests of justice require a remand. *See* TEX. R. APP. P. 43.3(b); *Rojas*, 393 S.W.3d at 846; *Cooper*, 125 S.W.3d at 804. "Appellate courts have broad discretion to exercise that power." *Cooper*, 125 S.W.3d at 804.

"Appellate courts have reversed for a new trial where, among other circumstances, the plaintiff failed to show damages with reasonable certainty, but the interests of justice required the plaintiff be given an opportunity to show the proper measure of his or her damages." *Id.*; *see Rojas*, 393 S.W.3d at 846; *see also Nishika Ltd.*, 953 S.W.2d at 739 (holding that plaintiffs should be afforded an opportunity to develop their damages evidence to segregate the damages); *Amstadt v.*

---

[8] We note that, at trial, Castleman argued that establishing individual liability did not matter, because "this is a derivative suit against a husband and wife who share everything and delegate everything to each other." Castleman does not urge this argument on appeal. Moreover, a person is not liable for that person's spouse's actions, unless the spouse acts as the other spouse's agent or the spouse incurs debts for necessaries. *See* TEX. FAMILY CODE ANN. § 3.201(a); *Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 (Tex. 2013).

*U.S. Brass Corp.*, 919 S.W.2d 644, 653–54 (Tex. 1996) (reversing court of appeals' take-nothing judgment and remanding for apportionment of liability).

Here, the jury found that both Roy Young and Billie Young breached their fiduciary duties to CYC. The jury further found a specific amount of damages for the breaches of fiduciary duty and imposed liability against both of the Youngs.[9] The jury further found that Roy Young acted with malice, and they awarded exemplary damages against him. Accordingly, we conclude that the interests of justice require this case to be remanded for an apportionment of liability.

Finally, we "may not order a separate trial solely on unliquidated damages if liability is contested." TEX. R. APP. P. 44.1(b); *see Nishika Ltd.*, 953 S.W.2d at 740. The damages suffered in this case, if any, are unliquidated, and the Youngs have contested liability for the breach of fiduciary duty claims. Accordingly, remand solely for a new trial on damages would be inappropriate; remand of both the liability issue and for damages is mandatory in this case. *See Nishika Ltd.*, 953 S.W.2d at 740.

   E. *Should the Award of Damages Based on a Breach of Fiduciary Duty Have Been Reduced in Accordance with Each Defendant's Percentage of Liability, as Found by the Jury?*

In the seventh point of error, the Youngs and CYC argue that the trial court erred by not adjusting the damages awards for the breach of fiduciary duties claims based on the percentages of responsibility found by the jury. Based on our disposition of issue number six, it is unnecessary to address this issue.

---

[9] In their brief, the Youngs and CYC argue that Castleman presented no evidence of actual damages for her breach of fiduciary duty claims. Castleman did, however, present evidence of the breach of fiduciary duty claims and the total damages from those claims. And "evidence of unsegregated damages among claims or parties is more than a scintilla of evidence of segregated damages." *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 739 (Tex. 1997).

*F. Should Punitive Damages Have Been Awarded to Castleman and Against Roy Young Based on the Jury's Finding that He Breached his Fiduciary Duty?*

In their eighth point of error, the Youngs and CYC argue that the trial court erred by awarding exemplary damages against Roy Young, because Castleman failed to establish actual damages caused by Roy Young.

Under section 41.004(a) of the Texas Civil Practice and Remedies Code, "exemplary damages may be awarded only if damages other than nominal damages are awarded." TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(a). Therefore, because we have reversed the award of actual damages, we sustain the Youngs and CYC's eighth point of error. *See Roberts v. Whitfill*, 191 S.W.3d 348, 358 (Tex. App.—Waco 2006, no pet.); *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 773 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Accordingly, we reverse the award of exemplary damages in the judgment and remand for a new trial regarding exemplary damages. *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 585 (Tex. App.—Austin 2007, pet. denied); *Green Tree Fin. Corp. v. Garcia*, 988 S.W.2d 776, 785 (Tex. App.—San Antonio 1999, no pet.); *Equistar Chems., LP v. Dresser-Rand Co.*, No. 14-02-00874-CV, 2008 WL 850132, at *6 (Tex. App.—Houston [14th Dist.] April 1, 2008, no pet.) (mem. op.).

*G. Should the Damage Awards Based on Breach of Fiduciary Duty Been Reduced Based on Castleman's 49% Ownership of CYC?*

In issue nine, the Youngs and CYC assert that the trial court erred by awarding Castleman the full amount of the damages awarded by the jury for the Youngs' breaches of fiduciary duty, because the damages were awarded to the corporation and Robert Castleman only owned 49% of CYC. The Youngs and CYC therefore contend that the judgment awarded Castleman more than the jury, because the jury's award to CYC was not reduced in accordance with Castleman's

ownership interest in the corporation. Based on our disposition of issue number six, it is unnecessary to address this issue.

### H. Was the Evidence of Malice Sufficient to Support a Punitive Damages Award?

In point of error ten, the Youngs and CYC contend that the evidence was insufficient to show that the harm to CYC caused by Roy Young resulted from malice. And, without sufficient evidence of malice, the Youngs and CYC conclude that "the award of punitive damages is unsupportable." Once again, based on our disposition of issue number six, it is unnecessary to address this issue.

### I. Should the Youngs' Breach of Contract Cause of Action and Affirmative Defenses Have Been Presented to the Jury?

In their eleventh issue, the Youngs and CYC argue that the trial court erred when it granted a directed verdict on their cause of action for breach of contract and when it refused to submit their requested jury charge questions regarding breach of contract, repudiation, and prior material breach.

As an initial matter, the Youngs and CYC's eleventh "issue is multifarious because it embraces more than one specific ground." *Priority One Title, LLC v. Andrado*, No. 14-21-00379-CV, 2023 WL 2259092, at *4 (Tex. App.—Houston [14th Dist.] Feb. 28, 2023, no pet.) (mem. op.). We may therefore disregard and refuse to consider the issue. *See id*. Nevertheless, we will address the issue to the extent we can determine the alleged errors about which the Youngs and CYC complain. *See id*.

#### 1. Background

In its first amended petition in intervention, CYC pleaded a cause of action for breach of contract. In that claim, CYC asserted that Castleman breached the Shareholder Agreement by failing to sell Robert Castleman's shares of CYC to CYC.

Subsequently, the Youngs and CYC filed a supplemental answer, in which they pleaded two affirmative defenses. Specifically, the Youngs and CYC asserted that Castleman's claims were barred due to her alleged prior material breach of the Shareholder Agreement and due to her alleged repudiation of the agreement.

At trial, Michael Gilroy, counsel for CYC and the Youngs, testified that he spoke to Castleman by phone on March 3, 2017. During the phone call, Castleman sought copies of CYC's records. When Gilroy explained that he could not provide her with copies of the records under the Shareholder Agreement, Castleman stated that the agreement did not matter, because she was a stockholder, and that she did not sign the agreement. Gilroy then explained that the estate and the heirs were bound by the agreement, even though she did not sign it. In the phone call, Castleman sought production of records, and Gilroy sought to determine the identity of the representative of the estate. Gilroy did not recall anything else important from the conversation.

After this conversation, on March 15, 2017, Castleman sent an email to the Youngs and CYC's counsel, seeking production of documents. The stated purpose of the email was to "ascertain[] the financial condition of Castleman & Young Construction, Inc. and other information that bears on the value of the Castlemans' Ownership interest.

On March 31, 2017, Gilroy wrote a letter to Castleman. In the letter, Gilroy stated that Roy Young was electing to purchase Robert Castleman's shares in CYC and that the "purchase price will be determined by the book value which is still in flux and will be revealed to an actual Executor of Bob's Estate." Similarly, Gilroy testified that, when he wrote the letter, "there were questions in regards to canceled contracts and the valuation."

In addition, according to Gilroy, counsel for Castleman, Taryn Biasiolli, in a phone conversation on around June 28, 2017, "refused to honor the buy/sell." And, on November 5, 2017,

Linda Leeser, another counsel for Castleman, sent an email to counsel for the Youngs and CYC declining counsel's "offer to draw up a purchase-sale agreement," because there were "a few issues that must be addressed before a purchase can even take place."

At the conclusion of the Youngs and CYC's case-in-chief, Castleman moved for a directed verdict on the breach of contract claim, which the trial court granted. Further, at the conclusion of all of the evidence, the trial court stated that it found that if Castleman had indicated, in the March 3, 2017, phone call, that she refused to sell the shares under the Shareholder Agreement, then Gilroy would not have sent the March 31, 2017, letter exercising Roy Young's option to purchase the shares and that the letter did not indicate that Castleman had made any statement regarding refusing to sell. The trial court then found that there was no evidence of the breach of contract claim and re-affirmed its decision to grant a directed verdict on CYC and the Youngs' breach of contract claim.

Finally, during the charge conference, the Youngs and CYC objected to the omission of questions regarding their breach of contract claim and their affirmative defenses of affirmative breach and repudiation. The trial court overruled the objections.

2. Did the Trial Court Err By Granting a Directed Verdict on CYC's Breach of Contract Claim?

In their appellate brief, the Youngs and CYC argue that the trial court erred by granting a directed verdict on their breach of contract claim against Castleman. In support of this argument, the Youngs and CYC assert two ways Castleman purportedly breached the Shareholder Agreement: (1) by allegedly canceling contracts between CYC and its customers, and (2) by requesting financial documents from CYC in manner that allegedly contradicts the Shareholder Agreement's $200,000 purchase price for Robert Castleman's shares of CYC. Neither of these

purported actions, however, constitutes a breach of any contract between Castleman and either the Youngs or CYC.

The record in this case contains evidence of only a single contract between the Youngs, CYC, and Robert Castleman: the Shareholder Agreement. Under that agreement, (1) either Roy Young or CYC was contractually obligated to purchase Robert Castleman's shares of CYC upon Robert Castleman's death; (2) Robert Castleman's estate, by and through its representative, was obligated to sell the shares for $200,000 to either Roy Young or CYC, depending on whether Roy Young timely invoked his purchase option; and (3) CYC was obligated to pay any unpaid salary earned by Robert Castleman and distribute Robert Castleman's share of any undistributed profits to the representative of his estate. Moreover, on March 31, 2017—within the option period specified by the Shareholder Agreement, Roy Young notified Castleman that he was exercising his option to purchase Robert Castleman's shares of CYC. Upon this election, the contract required Roy Young to purchase Robert Castleman's shares, and it required the representative of Robert Castleman's estate to sell the shares to Roy Young.

After reviewing the record, we conclude that only CYC pleaded a cause of action for breach of contract and that CYC failed to provide any evidence in support of its claim.

First, CYC, in its plea in intervention, filed a claim for breach of contract against Castleman, arguing that it was entitled to specific performance and seeking to require Castleman to sell the shares to CYC. Therefore, because "[a] trial court judgment must conform to the pleadings of the parties," CYC was required to show that Castleman breached a contractual obligation owed to CYC. *Carter*, 817 S.W.2d at 688. The evidence, however, shows that Roy Young exercised his option under the Shareholder Agreement to purchase Robert Castleman's shares of CYC. As a result, the evidence showed that Castleman owed a contractual duty to Roy

Young, to sell Robert Castleman's shares to Roy Young. Castleman did not, however, owe *any* duties to CYC; Roy Young was obligated to purchase the shares from Castleman, and CYC was obligated to pay any unpaid salary and distribute any undistributed profits to Castleman, but Castleman's sole obligation under the contract was to sell the shares to Roy Young. As a result, CYC failed to provide any evidence showing that Castleman breached a contract she had with CYC.

Second, to the extent CYC and the Youngs argue that Castleman canceled contracts between CYC and its customers, they fail to show how any such action amounted to a breach of a contract that Castleman had with either CYC or the Youngs. While such actions, if shown by CYC and the Youngs, might constitute interference with CYC's contracts—a claim separately pleaded by CYC and rejected by the jury—CYC and the Youngs fail to show how any alleged action by Castleman to cancel CYC's construction contracts had any bearing on the Shareholder Agreement. Indeed, any actions Castleman may have taken with respect to CYC's pending construction contracts could not affect the Shareholder Agreement, because the agreement set a fixed purchase price for Robert Castleman's shares of CYC, at $200,000, and it obligated CYC to pay the representative of his estate any unpaid salary and to distribute any undistributed profits owed to him *at the time of his death*. Thus, any actions taken in relation to CYC's contracts *after* Robert Castleman's death could not have affected the terms of the contract, because the amount CYC was required to pay under the contract was fixed as of the date of his death. As a result, Castleman could not have breached the Shareholder Agreement by canceling CYC's contracts after Robert Castleman's death, even if the evidence showed she did so, because any actions taken with regard to CYC's construction contracts after Robert Castleman's death were irrelevant to the terms of the Shareholder Agreement.

Similarly, CYC and the Youngs fail to show how any requests for financial information from CYC made by Castleman constitute a breach of the Shareholder Agreement. Although the evidence shows that Castleman requested financial information from CYC and the Youngs, CYC and the Youngs do not show how this request constituted a refusal to sell the shares as required by the Shareholder Agreement. In fact, the record contains no evidence showing that Castleman rejected payment of $200,000 for the shares or otherwise refused to sell the shares. At most, Castleman's request for valuation information might be evidence of an anticipatory repudiation of the contract—an issue we address below. But CYC and the Youngs fail to show any obligation under the Shareholder Agreement that would be impacted by Castleman's request for financial information. *See Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 695 (Tex. App.—Austin 1993, writ denied) ("When a cause of action is based on breach of contract, the plaintiff must show that a contract existed between the parties, that the contract created duties, *that the defendant breached a duty under the contract*, and that the plaintiff sustained damages as a result." (emphasis added)). Thus, they fail to show that the request for information constituted a breach of the contract.

Finally, to the extent Gilroy testified that Castleman's attorney "refused to honor the buy/sell" agreement, Gilroy testified that the conversation with Castleman's counsel occurred around June 28, 2017, which was after the June 1, 2017, deadline by which Roy Young was required to purchase, and Castleman was required to sell, the shares, as required by the Shareholder Agreement.

Accordingly, we conclude that the trial court did not err by granting the directed verdict on CYC's breach of contract claim.

3. Did the Trial Court Err By Refusing to Include the Youngs and CYC's Proffered Jury Charge Questions Regarding CYC's Breach of Contract Claim and the Youngs and CYC's Affirmative Defenses?

The Youngs and CYC also argue that the trial court erred by omitting their requested jury instructions regarding CYC's breach of contract claim and their affirmative defenses—repudiation and prior material breach. [ANT 38–42]

We review complaints regarding a trial court's charge to the jury under an abuse of discretion standard. *See Sanchez v. Mica Corp.*, 107 S.W.3d 13, 31 (Tex. App.—San Antonio 2002, judgment vacated in part w.r.m.); *De Leon v. Furr's Supermarkets, Inc.*, 31 S.W.3d 297, 300 (Tex. App.—El Paso 2000, no pet.). "A trial judge must submit a requested jury instruction if it is supported by some evidence, but may refuse to do so if it is not supported by any evidence." *Sanchez*, 107 S.W.3d at 31; *see* TEX. R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). We do not reverse a trial court's judgment based on charge error unless the error, when considered in light of the totality of the circumstances, amounted to a denial of the rights of the complaining party such as was reasonably calculated and probably did cause rendition of an improper judgment. *See Sanchez*, 107 S.W.3d at 31; *De Leon*, 31 S.W.3d at 300. Finally, a party waives a complaint regarding the trial court's failure to include a jury instruction if the party fails to request an instruction in substantially correct wording. *See* TEX. R. CIV. P. 278; *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 763 (Tex. App.—El Paso 2000, no pet.); *Walls v. Klein*, No. 04-13-00565-CV, 2014 WL 3339791, at *2 (Tex. App.—San Antonio July 9, 2014, pet. denied) (mem. op.); *Discover Prop. & Cas. Ins. Co. v. Tate*, 298 S.W.3d 249, 257 (Tex. App.—San Antonio 2009, pet. denied); *Heatley v. Red Oak 86, L.P.*, 629 S.W.3d 377, 390–91 (Tex. App.—Dallas 2020, no pet.); *McIntyre v. Comm'n for Law. Discipline*, 247 S.W.3d 434, 445 (Tex. App.—Dallas 2008, pet. denied).

Here, the Youngs and CYC failed to provide evidence in support of their requested jury instructions.

First, as discussed previously, *supra* section I.3, the trial court did not err by granting a directed verdict on CYC's breach of contract claim. For the same reasons, the trial court did not err by omitting the Youngs and CYC's requested jury instruction regarding CYC's breach of contract claim.

Second, as discussed *supra*, section I.3, once Roy Young timely exercised his option to purchase the shares, Castleman's duty, under the Shareholder Agreement, was to sell Robert Castleman's shares of CYC to Roy Young. Thus, Castleman owed no such duty to CYC. But CYC and the Youngs only requested the following jury instructions, as relevant here:

### QUESTION NO. 1

Did Billie Castleman, in her capacity as the administrator of the Estate of Robert Castleman, fail to comply with the agreement with Castleman & Young Construction, Inc.?

**Question – excuse for failure to comply by Castleman & Young Construction, Inc.**

If you answered "Yes" to Question _____ then answer the following question. Otherwise, do not answer the following question.

QUESTION _____

Was Castleman & Young Construction, Inc.'s failure to comply excused?

Failure to comply by Castleman & Young Construction, Inc. is excused by Billie Castleman's prior repudiation of the same agreement.

A party repudiates an agreement when he indicates, by his words or actions, that he is not going to perform his obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement. The repudiation must be absolute and unconditional.

These questions only asked the jury whether Castleman breached a contract *with CYC*, not with Roy Young. As a result, CYC and the Youngs failed to submit a proposed jury instruction regarding whether Castleman repudiated or engaged in a prior material breach of a contract *with Roy Young*. Thus, because the evidence showed that Roy Young exercised his option to purchase Robert Castleman's shares, CYC and the Youngs waived any jury charge error regarding their affirmative defenses to the breach of contract claim involving Roy Young's duty to purchase Robert Castleman's shares of CYC for $200,000 and Castleman's duties to sell those shares to Roy Young. *See, e.g.*, *Hornburg*, 20 S.W.3d at 763; *Walls*, 2014 WL 3339791, at *2; *Tate*, 298 S.W.3d at 257.

Further, CYC and the Youngs failed to submit proposed jury instructions that properly set out the law related to prior material breach of a contract. In addition, as discussed *supra*, section I.3, they fail to provide any evidence showing that Castleman actually breached the Shareholder Agreement. Thus, CYC and the Youngs waived any charge error related to prior material breach. *See Hornburg*, 20 S.W.3d at 763; *McIntyre*, 247 S.W.3d at 445.

Finally, "[u]nder the doctrine of repudiation or anticipatory breach, 'an injured party is discharged from its remaining duties to perform under a contract where the other party repudiates its contractual duty before the time for performance.'" *Sci. Mach. & Welding, Inc. v. FlashParking, Inc.*, 641 S.W.3d 454, 463 (Tex. App.—Austin 2021, pet. denied) (quoting *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 139 (Tex. App.—Houston [14th Dist.] 2000, no pet.)); *see Colvin v. Rickert*, No. 04-05-00165-CV, 2006 WL 285993, at *8 (Tex. App.—San Antonio Feb. 8, 2006, pet. denied) (mem. op., citations omitted).

Here, to the extent the requested instruction brought the trial court's attention to the Youngs' and CYC's contention that Castleman repudiated a contract with CYC, the only evidence

in the record that would support a jury finding that Castleman repudiated the contract is Gilroy's testimony that in "the first conversation with Taryn Biasiolli, she refused to honor the buy/sell." But Gilroy testified that this conversation took place around June 28, 2017, which was after the June 1, 2017, deadline by which Roy Young was required to purchase, and Castleman was required to sell, Robert Castleman's shares of CYC. As a result, this testimony does not support the Youngs and CYC's affirmative defense of repudiation, because, even if the jury credited this testimony, the alleged repudiation occurred *after* the contract had been breached. Thus, there is no evidence that Castleman repudiated the contract *before the time for performance. See FlashParking, Inc.*, 641 S.W.3d at 463.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by declining to include the proposed jury instructions proffered by CYC and the Youngs. We overrule the eleventh issue.

### J. Was Castleman Entitled to Recover Attorneys' Fees?

In their final point of error, the Youngs and CYC argue that "when the Court reverses the judgment against Mr. Young on the breach of contract claim, then the attorneys' fees award must also be reversed."

In light of our disposition of the Youngs and CYC's first three issues, in which we affirmed the trial court's judgment against Roy Young on the breach of contract claims, we overrule the Youngs and CYC's twelfth point of error.

### K. Did the Trial Court Properly Reduce the Award of Attorneys' Fees?

In her cross-appellant's brief, Castleman raises a single issue on cross-appeal, in which she argues that "the trial court erred by reducing the attorney's fees award to $19,199."

1. Background

Castleman included a request for an award of attorneys' fees in her original petition. Similarly, CYC sought an award of attorneys' fees in its first amended petition in intervention.

At trial, Jeffrey Sandberg, counsel for CYC and the Youngs, testified as to his credentials, that his hourly rate for this case was $400, and as to his total fee for this case.

Castleman also testified before the jury, that Rashin Mazaheri, counsel for Castleman, was charging her $400 per hour, that Castleman had seen Mazaheri in court, that she had spoken with Mazaheri before or after court, and that she was copied on written work Mazaheri created during trial.

Similarly, Linda Leeser, a previous counsel for Castleman, testified that she charged Castleman an hourly rate of $245. She further testified that she had been licensed since 2015 and that her rate was reasonable and necessary and was the same rate that other attorneys in the area with similar experience would charge. She also testified as to her billing records, which were admitted into evidence as an exhibit. When taken on voir dire, Leeser testified that the reasonable and necessary attorney's fees for her representation were $19,199.

At the conclusion of the trial, the jury found that $100,000 was "a reasonable fee for the necessary legal services of Billie F. Castleman, Individually and Derivatively on behalf of Castleman & Young Construction, Inc.'s attorney for the claim of breach of contract."

After the trial, the Youngs and CYC filed a motion for entry of judgment non obstante veredicto. In the motion, the Youngs and CYC argued that the evidence was legally insufficient to support an attorneys' fee award of $100,000. Specifically, the Youngs and CYC contended that "[b]ecause the sole evidence regarding an award of attorneys' fees was Ms. Leeser, there is no

evidence that would support an award in excess of Ms. Leeser's testimony," which "was that [the reasonable and necessary attorneys' fees were] $20,000 or less."

On July 6, 2022, the trial court held a hearing on Castleman's motion to enter judgment and on the Youngs and CYC's motion for judgment non obstante veredicto. At the hearing, the Youngs and CYC argued that the evidence was insufficient to support the award of attorneys' fees. Upon consideration, the trial court found that the only evidence related to attorneys' fees was provided by counsel Leeser, that Ms. Leeser "did not have $100,000 worth of invoices," that "there was no evidence as to the totality of $100,000," and that there "was evidence as to attorney's fees." The trial court therefore stated, "whatever fees were in evidence – we have to go back and look at it – that's the fees that should be awarded." Finally, the court ruled as follows:

> What the Court is going to do is we are going to go back and review the evidence to see how much was actually testified to and how much was submitted as far as evidence that the attorneys were able – sorry, that the jury was able to go back and surmise.
> But there is just – at this point there is no evidence to support the $100,000, but there is evidence to support attorney's fees. So we are going to figure out what that exact amount is, okay?

Subsequently, in the court's judgment, the trial court awarded Castleman $19,199 "for attorney's fees based on the evidence submitted to the jury."

2. Applicable Law

Under section 38.001 of the Texas Civil Practice and Remedies Code, a person may recover attorney's fees in conjunction with a claim for services rendered, labor performed, or breach of contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(1), (2), (8).

"An award of attorney's fees must be supported by evidence that the fees are reasonable and necessary." *Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 620 (Tex. App.— Houston [14th Dist.] 2019, no pet.). When determining the reasonableness and necessity of

attorney's fees in a fee-shifting situation, the lodestar method applies. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019). Under the lodestar method, "a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Id*. at 501–02.

"Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id*. at 502; *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763, 764 (Tex. 2012). Further, when a party seeks recovery of attorneys' fees for worked performed by more than one attorney, the party must provide sufficient evidence to show the services performed by, and the reasonably hour rate for, each attorney. *See Olivas*, 370 S.W.3d at 763; *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013); *Calleja-Ahedo v. Compass Bank*, No. 01-15-00210-CV, 2020 WL 3820420, at *12 (Tex. App.—Houston [1st Dist.] July 7, 2020, no pet.) (mem. op.).

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Wilson*, 168 S.W.3d at 827. Thus, "[w]hen reviewing a trial court's award of attorney's fees, we must ensure the record contains sufficient evidence to support such an award." *Nath v. Tex. Children's Hosp.*, No. 14-19-00967-CV, No. 14-20-00231-CV, 2021 WL 451041, at *13 (Tex. App.—Houston [14th Dist.] Feb. 9, 2021, pet. denied) (mem. op.) (quoting *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020)). Moreover, the evidence must support the entire amount of the attorney's fee award. *See Montano*, 414 S.W.3d at 737 (affirming award of attorney's fees for one attorney, reversing award of attorney's fees for second attorney, and remanding for further proceedings);

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 123–24 (Tex. 2009) ("*Akin Gump*") (holding that "although the evidence is legally sufficient to support a finding of some amount, it is legally insufficient to support the entire amount the jury found" and that the attorney's fees award should either be remitted or a new trial should be granted); *Nath*, 2021 WL 451041, at *14 (holding that "although the evidence is legally sufficient to support a finding of some amount of future appellate attorney's fees, it is legally insufficient to support the entire amount awarded in the trial court's final judgment"); *Sloane*, 577 S.W.3d at 621 (holding that although the evidence supported $11,014.44 in attorney's fees through September of 2016, the evidence was not "legally sufficient to support the amount of attorney's fees through trial"); *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *9 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.) ("While counsel's testimony is some evidence to support an attorney's-fees award, it is legally insufficient under the lodestar method to support the amount awarded.").

Finally, we ordinarily "render judgment when we sustain a no evidence issue. However, when there is some evidence of damages, but not enough to support the full amount, it is inappropriate to render judgment." *Akin Gump*, 299 S.W.3d at 124 (internal citations omitted). Instead, if the evidence supports some, but not all, of a damages award, the appropriate dispositions are to order a remittitur conditioned on a new trial or to grant a new trial. *See id.*; *cf. Broyhill Furniture Indus., Inc. v. Murphy*, No. 05-11-01545-CCV, 2013 WL 4478172, at *11 (Tex. App.—Dallas Aug. 20, 2013, no pet.) (mem. op.) (holding that a trial court has no power to order a remittitur without conditioning the remittitur on a new trial).

3. Discussion

In her sole issue on cross-appeal, Castleman contends that the trial court erred by reducing the jury's award of $100,000 in attorney's fees to an award of $19,199. Castleman argues that because there was some evidence to support *an* award of attorney's fees, we should hold that the trial court erred by sustaining the Youngs and CYC's legal sufficiency challenge to the attorney's fees award, should "modify the judgment to reflect the jury's finding, and affirm the judgment as modified."

The evidence presented in the trial court was legally sufficient to sustain an award of $19,199 in attorney's fees for the services performed by counsel Leeser. Other than the evidence of Leeser's services and the jury's ability to witness Mazaheri[10] representing Castleman during trial, however, the evidence presented to the jury did not establish any particular services performed by any counsel for Castleman; who performed other services for her; when the other services were performed; the reasonable amount of time for any other services; or the reasonable hourly rate for any other counsel. *See Rohrmoos Venture*, 578 S.W.3d at 502; *Olivas*, 370 S.W.3d at 763, 764. Further, even with respect to counsel Mazaheri, the only evidence with respect to her hourly rate was Castleman's testimony. But Castleman is not an attorney. Thus, there is no evidence in the record to support any award of attorney's fees based on Mazaheri's representation of Castleman. *See Cantu v. Moore*, 90 S.W.3d 821, 826 (Tex. App.—San Antonio 2002, pet. denied) (holding that expert testimony is required to support an attorneys' fees award and that

---

[10] Mazaheri testified, in a bill of review and outside the jury's presence, as to her qualifications, that she was charging an hourly rate of $400 for this case, that her time for trial in the case included her hours in the courtroom during trial and the work she performed "outside of court when issues have come up that the Court need[ed] a brief or legal research on," and that her fees, as of the fifth day of trial, were "$16,000 and some change." No party explains how this excluded testimony should factor into our analysis.

there was no evidence to support an award of attorneys' fees when the only testimony was from a non-attorney witness).

We therefore conclude that the evidence, while sufficient to support a finding of some amount of attorneys' fees, was legally insufficient to support the entire $100,000 amount awarded by the jury. *See Montano*, 414 S.W.3d at 737; *Akin Gump*, 299 S.W.3d at 123–24; *Nath*, 2021 WL 451041, at *14; *Sloane*, 577 S.W.3d at 621; *Dinkins*, 2018 WL 2248572, at *9.

4. Disposition of Castleman's Cross-Appeal

At the July 6, 2022, hearing, the trial court stated that it was going to award the amount of attorney's fees supported by counsel Leeser's testimony and evidence. Consequently, when the trial court issued its judgment, the trial court reduced the jury's award of attorneys' fees and only awarded fees of $19,199.

A trial court may not, however, simply reduce the award of attorney's fees. *See Akin Gump*, 299 S.W.3d at 124; *Snoke v. Republic Underwriters Ins. Co.*, 770 S.W.2d 777, 777 (Tex. 1989) ("The trial court had no power to order a remittitur in the amount of attorneys' fees found by the jury without conditioning that remittitur on a new trial."); *Murphy*, 2013 WL 4478172, at *11. Rather, the trial court could only order a remittitur conditioned on a new trial or grant a new trial. *See* TEX. R. CIV. P. 320 (authorizing trial court to grant a new trial and set aside a judgment for good cause on the court's own motion); *Akin Gump*, 299 S.W.3d at 124; *Murphy*, 2013 WL 4478172, at *11.

Accordingly, because the evidence was insufficient to support the jury's award of $100,000 in attorney's fees, we affirm the trial court's order setting aside the jury's award of attorneys' fees and overrule Castleman's sole point of error on cross-appeal. *See* TEX. R. CIV. P. 301; *Westheimer v. Ziemer*, 702 S.W.3d 621, 633 (Tex. App.—Houston [1st Dist.] 2024, no pet.).

Further, because the trial court lacked authority to order a remittitur without conditioning it on a new trial, we reverse the trial court's award of attorneys' fees and remand to the trial court for further proceedings.

## CONCLUSION

Based on the foregoing, we reverse the trial court's judgment with regard to the breach of fiduciary damages award against each of the Youngs—including actual and exemplary damages—and remand the breach of fiduciary duty claims to the trial court for a new trial on both the issue of liability and the amount of damages, if any. We also reverse the trial court's award of attorneys' fees to Castleman on her breach of contract claims and remand for the trial court to either order remittitur conditioned on a new trial or for a redetermination of reasonable and necessary attorneys' fees. We affirm the trial court's judgment in all other respects.

H. Todd McCray, Justice